Patricia **GUNTER, Hubert Maehr, Anna Bartosh and all persons similarly situated, Plaintiffs,**

v.

**RIDGEWOOD ENERGY CORPORATION, Robert E. Swanson, Gary L. Hall, and Hall–Houston Oil Company, Defendants.**

Civ. No. 95–438 (WHW).

United States District Court,
D. New Jersey.

Jan. 29, 1996.

G. Martin Meyers, Law Offices of G. Martin Meyers, P.C., Denville, NJ and Joseph Sternberg, Emily C. Komlossy, Goodkind Labaton Rudoff & Sucharow LLP, New York City, for Plaintiffs.

Andrew J. Cevasco, Herten, Burstein, Sheridan, Cevasco, Bottinelli & Litt, Hackensack, NJ and James L. Stengel, Laurie S. Dix, Donovan Leisure Newton & Irvine, New York City, for Defendants Ridgewood Energy Corporation and Robert E. Swanson.

William T. Reilly, William D. Wallach, McCarter & English, Newark, NJ and Gerald Conley, Jackson & Walker, LLP, Dallas, TX, for Defendants Gary L. Hall and Hall–Houston Oil Company.

## OPINION AND ORDER

WALLS, District Judge.

This matter comes before the Court on the motion of plaintiffs Patricia Gunter, Hubert Maehr and Anna Bartosh to certify a class pursuant to Federal Rule of Civil Procedure 23.

## BACKGROUND

The complaint reveals that the named plaintiffs as well as the putative class members are all investors in a series of oil and gas limited partnerships (the "Ridgewood Partnerships") formed and promoted by defendants, Ridgewood Energy Corporation, its President and Chairman, Robert E. Swanson, Hall–Houston Oil Company, and its Chief Executive Officer and director, Gary L. Hall. Compl.Para. 1, 12, 13. The partnerships held interests in oil and gas leases, and financed well-drilling and the construction of production facilities and pipelines in the United States waters of the Gulf of Mexico. The defendants sold approximately $150,000,-000 worth of interests in the partnerships between 1986 and 1990, to 3,380 investors, many of whom invested in multiple partnerships. *Id.* at Para. 2; Reply Affidavit of G. Martin Meyers, Exh. A.

The complaint further declares that the defendants disseminated private placement memoranda and program summaries (the "offering materials") of each partnership which included false and fraudulent statements relating to the profitability of the partnerships. Compl. at Para. 25. Specifically, plaintiffs contend that defendants misrepresented certain projects as having "proven" oil and gas reserves and as being "low risk," while also exaggerating the results of wells in operation. *Id.* In addition, defendants allegedly failed to disclose material information about the partnerships at the time of their formation, such as an independent third party appraisal by an engineering firm which reflected reserves substantially less than those ultimately represented by the defendants. *Id.* at Para. 26. During the life of the partnerships, defendants allegedly fraudulently concealed from the plaintiffs the financial health of the drilling ventures and consequently, of the partnerships themselves. *Id.* at Para. 30. The last significant act of fraud, according to the plaintiffs, occurred when defendants Ridgewood Energy Corp. and Robert E. Swanson sent plaintiffs a letter, dated June 9, 1994, which advised them to approve the sale of the assets of most of the partnerships to the Apache Corporation ("Apache"). *Id.* at Para. 33; that letter falsely represented the worth of the partnerships, the benefits of the sale to the plaintiffs, and failed to disclose that certain of the defendants stood to reap considerable gains from the sale. *Id.*

The complaint demands relief, including damages, costs, attorney's fees and the imposition of a constructive trust, pursuant to: 1) 18 U.S.C. § 1961–1968 (the Racketeer Influenced and Corrupt Organizations Act ["RICO"]); 2) 15 U.S.C. § 78j(b) and 78t (the Securities and Exchange Act of 1934, Sections 10(b) and 20(a)) and 17 C.F.R. § 240.10b–5 (Rule 10b–5 promulgated under the Act); and 3) state law causes of action premised on fraud and deceit, breach of fidu-

ciary duties, and negligent misrepresentation.

DRILLING AND COMPLETION

1986–I
1986–II
1986–III
1986–IV
1986–V
1987–I
1987–II
1987–III
1987–IV
1987–V
1988–I
1988–II
1988–III
1988–IV
1989–I
1989–II
1989–III

The named plaintiffs seek certification of the class of all investors of the following partnerships:

LEASEBANK

LEASEBANK II
LEASEBANK III
LEASEBANK IV
LEASEBANK V

PIPELINE

PIPELINE II

EQUITY INCOME

EQUITY INCOME, L.P.

Plaintiff Anna Bartosh invested in the following funds: 1988–I, 1988–II, 1989–I, Leasebank II, Leasebank III, Leasebank V, and Equity Income, L.P. Plaintiff Hubert Maehr invested in: 1987–IV, Leasebank IV, and Leasebank V. Plaintiff Patricia Gunter invested in: 1987–IV, Leasebank III, Leasebank IV, and Leasebank V. See Brief of Defendants Gary Hall and Hall–Houston at 9.

These plaintiffs, who have invested in 9 different Ridgewood Partnerships, seek certification of the class of all investors in 23 Ridgewood Partnerships.

## DISCUSSION

Federal Rule of Civil Procedure 23 provides that class actions may be maintained only if: 1) the class is so numerous that joinder of all members is impracticable ("numerosity"); 2) there are questions of law or fact common to the class ("commonality"); 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and 4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed.R.Civ.P. 23(a). Plaintiffs requesting certification of a class praying for damages must also show that 1) the questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and 2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

The Third Circuit has found that "[c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device ... the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action.'" *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985) (citations omitted). This Court has followed the direction of the appeals court and has resolved any doubts as to the propriety of certification in favor of allowing the class action. Accordingly, although not inexorably, the motion of plaintiffs is granted.

This opinion discusses each of the Rule 23 requirements, and explains how the Court reached its conclusion.

*Rule 23(a)*

*1. Numerosity*

■ The class that plaintiffs seek to certify includes all investors in 23 Ridgewood

Partnerships. According to Ridgewood, the total number of investors was 3,380, although some investors purchased interests in more than one partnership and hence the actual class may be somewhat smaller. At oral argument neither plaintiffs' nor defendants' counsel was able to quantify the number of class members. Plaintiffs surmise that there are "thousands." Defendants contend that there are fewer.

Though no precise number of class members has been offered, this Court finds that the class is sufficiently numerous. Even if the reportedly "thousands" of members of this putative class only amounted to "hundreds," this prong would still be easily met. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785–86 (3d Cir.1985), ("[t]he allegation of more than 90 geographically dispersed plaintiffs met the numerosity requirement of Fed. R.Civ.P. 23(a)(1)").

### 2. Commonality

■ This standard is also easily met by plaintiffs. At the very least, all investors share the same legal claims arising from the defendants' alleged securities fraud. Significantly, none of the defendants argues that the claims of the putative class members do not share common questions of law and fact.

It is important to note the difference between the "commonality" requirement of Rule 23(a) and the seemingly similar requirement of Rule 23(b)(3) which plaintiffs also have to satisfy. The latter states that a damages class may only be certified where the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members. The former, on the other hand, simply requires that there *be* common issues of law and fact. While the defendants do not contest that common issues of law and fact exist, they do, as will be discussed, vigorously contest that those issues predominate over individual issues.

### 3. Typicality

■ The requirement that the claims of named plaintiffs be typical of the class as a whole has presented problems for the courts—many judges and commentators have concluded that this requirement is actually duplicative of the other provisions of Rule 23. *See, e.g., Angelastro v. Prudential–Bache Securities, Inc.*, 113 F.R.D. 579 (D.N.J.1986). Despite the many different formulations of this requirement that have been employed by the courts, the Third Circuit has stated that the "bottom line" is that "where plaintiff's factual or legal stance is not characteristic of that of other class members, the typicality prerequisite has not been met." *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). The purpose of this requirement is to "permit the district court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately represented." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992).

The defendants argue that the named plaintiffs are atypical because: 1) they purchased their securities through the brokerage firm of Zoch and Zoch and will be subject to a statute of limitations defense that will not be asserted against other class members; and 2) the plaintiffs did not vote in favor of the sale of the Ridgewood Partnership assets to Apache and thus may not claim that they relied upon the June 9, 1994 letter. The plaintiffs do not refute these arguments directly, but rather counter that a typicality inquiry should focus on the defendants' conduct vis a vis the named plaintiffs—specifically whether the named plaintiffs were treated differently from the other plaintiffs. Reply Brief of Plaintiffs at 22.

The Third Circuit's *Weiss* opinion, which upheld the district court's decision to certify a class of all osteopathic physicians who were unable to obtain staff privileges at a hospital, is instructive. 745 F.2d at 810. There the defendant had argued that certification was improper because the named plaintiff had applied for staff privileges and was rejected whereas some of the class members had not applied at all. Furthermore, the defendant maintained that a defense asserted against the plaintiff—that he was rejected for incompetence—was unique and therefore rendered

him atypical of the class. The Court rejected both of these contentions and concluded: "The essential legal claim of all the plaintiffs, including Weiss, is that they are osteopathic physicians who can not obtain staff privileges at [the hospital] because of a scheme by the M.D.'s who control admissions [there] to exclude them in violation of the antitrust laws. In addition, the factual matrix that suggests this legal claim is the same for all the plaintiffs, again including Weiss." *Id.* at 810.

In *Weiss,* the Third Circuit took a "big picture" approach—even though there were some legal and factual elements unique to the named plaintiff, they did not warrant the decertification of the class. This Court reads *Weiss* to suggest strongly that certification is appropriate here. All of the plaintiffs claim to be victims of a common scheme perpetrated by defendants to defraud them. Although the question of the statute of limitations and the actual reliance on the June 9, 1994 letter may distinguish the plaintiffs from the rest of the class, these distinguishing characteristics do not render them atypical.[1]

The Court does not dismiss lightly the argument of defendants that the essential factual matrix underlying the legal claims of the plaintiffs is not the same; there are 23 different partnerships which will require different proofs as to materiality, causation and reliance to establish a violation of Rule 10b-5. When the statute of limitations and June 9, 1994 letter are thrown into the mix, the individual facts arguably rise to prominence and render the plaintiffs' claims less typical.[2] The Court, however, is persuaded that this view of the facts is inappropriate. As to the Drilling and Completion Partnerships—which are 17 out of the 23 ventures here—the alleged fraud is the same: the defendants overstated the reserve potential and the degree of risk of each venture. Also, the June 9, 1994 letter was sent to *all* putative class members. These are the basic facts which are the gravamen of this complaint, and they are common to the named plaintiffs as well as to the rest of the class.

The Court finds that the plaintiffs are typical of the class.

### 4. Adequacy

■ The adequacy of the class representatives depends upon two factors: 1) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and 2) the plaintiff must not have interests antagonistic to the class. *Weiss,* 745 F.2d at 811. Defendants do not challenge the plaintiffs' counsel's ability to represent the class. They do, however, argue that plaintiffs are inadequate representatives because they possess insufficient personal information regarding the prosecution of this litigation, and that, because of their familial closeness, they will pursue their own interests at the expense of the class. As her deposition testimony reveals, plaintiff Bartosh clearly had very little personal involvement with the purchase of the securities at issue, the basis of this litigation as well as the litigation itself. Brief of Defendants Ridgewood Energy Co. and Robert E. Swanson, Exhibit C at 18–19, 37–38. She is an 80 year old woman whose niece, plaintiff Gunter, has a power of attorney over her affairs. If Ms. Bartosh were the only plaintiff, adequacy would not exist. However, defendants' have made no showing that plaintiffs' Gunter or Maehr are inadequate class representatives—and, after a review of their deposition testimony, this Court finds to the contrary. Thus, these named plaintiffs, taken together, are sufficiently involved and possess enough information to pass the adequacy threshold.

Defendants also argue that plaintiffs are not adequate because there are claims unique to them. Hence, "inordinate emphasis" will

---

1. *See also Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d at 923. There the Third Circuit upheld the district court's decision to certify a class of investors in securities proceeding on theories of fraud and RICO. The Court found typicality to be present even though some of the plaintiffs had made a profit on the securities they held while many of the class members had not. Similarly, that plaintiffs here did not vote in favor of the sale of the assets and that there may be a statute of limitations defense applicable to them does not destroy their typicality.

2. This is really the same inquiry that must be undertaken to determine if the individual issues predominate over those common to the class as a whole.

be placed on those claims rather than the claims of the class as a whole. This argument merits the Court's attention, but, like the defendants' typicality arguments, also substantially overlaps with the question of individual issues predominating over common issues. Therefore, the following discussion of the Court's finding that common issues predominate also demonstrates the adequacy of the named representatives.

*23(b)(3)*

1. *Predominance of Common Issues of Law and Fact*

Defendants argue that the following are predominating issues which are not common to the class: 1) the alleged violations of Rule 10b–5, RICO and the common law fraud standards which must be established with regard to each of the 23 partnerships; 2) the unique statute of limitations defenses applicable to certain plaintiffs, such as the named plaintiffs; 3) the common law claims which will require the application of different state substantive law for each plaintiff; and 4) the issue of damages. Defendants also argue that, even if none of these individual issues would predominate on its own, the aggregation of these individual issues will predominate. Each of these arguments is reviewed.

1) Proofs with regard to liability

■■■ In order to establish a primae facie case of securities fraud under Rule 10b–5, plaintiffs must plead and prove (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff reasonably relied, and (5) which was the proximate cause of an economic loss. *Peil v. Speiser,* 806 F.2d 1154, 1160 (3d Cir.1986). Because each of these elements must be proved as to each partnership, defendants argue, individual issues will predominate. In support of this position they rely on *Parnes v. Mast Property Investors, Inc.,* 776 F.Supp. 792 (S.D.N.Y.1991), in which the District Judge in a securities fraud case denied the plaintiffs' motion to certify a class of all

investors of 30 different limited real estate partnerships. That Court held:

> Even if [plaintiff] is correct and the defendants implemented an identical scheme in the sale of each of the thirty limited partnerships, common factual issues do not predominate here. Rather, quite distinct factual questions arise in connection with each partnership (i.e. the fair market value of each property; the accuracy of the appraisal contained in the offering memorandum; the reasons for the property's decline, if any, in value; and the damages, if any, suffered by each plaintiff ... [plaintiff] will have to demonstrate specific facts supporting his allegations for each of the thirty partnerships.

*Id.* at 799–800. Here, the Court must consider 23 different partnerships, all with different offering material. Certainly individual issues regarding the proof of Rule 10b–5 violations for each one will play an important part of a class action. However, the allegation of fraud with regard to the June 9, 1994 letter inducing the plaintiffs to sell the assets of the partnerships to Apache will not require individual proofs because all putative class members received that letter. Unlike *Parnes,* only part of the liability issues require individual proofs.[3]

Plaintiff's main riposte to defendants' reliance on *Parnes* is that that case is not binding authority and does not comport with the law of this circuit. Instead, plaintiffs point to the Third Circuit's *Eisenberg v. Gagnon,* 766 F.2d at 785, a rather strong opinion in favor of class certification in securities cases. In *Eisenberg,* the plaintiffs alleged that the defendants committed fraud in three different securities offerings. The appellate court found that the district court abused its discretion in denying certification because of the existence of individual questions of reliance upon the alleged fraud. The court explained that "[t]he presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members." *Id.* at 786. If

**3.** The issue concerning the reliance on that letter, as will be discussed below, is not a genuine

obstacle to class certification.

district courts refused to certify class actions on this ground then class actions in Rule 10b–5 cases would never be certified. *Id.* The circuit court, therefore, instructed district courts "to order separate trials, if necessary, limited to the issue of reliance." *Id.* On the facts before it, the appeals court concluded that the denial of certification was inappropriate because the case

> "did not present extraordinarily complex questions of causation and reliance, despite the possibility that only some members of the class may have relied on the offering materials prepared by defendants in choosing to invest. Nor was this case one founded on a variety of oral representations, a circumstance which might present a greater obstacle to class treatment, since the core of this case is the claim that the named plaintiffs, and presumably the class members, relied on virtually identical written materials."

*Id.* at 786–87.

This Court agrees with the defendants that *Eisenberg* does not dictate the outcome of this case. On the one hand, that opinion contains strong language indicating that individual issues of reliance should not prevent certification and favoring certification in securities cases generally. On the other hand, *Eisenberg* involved only three different securities with "virtually identical" written materials. Here there are 23 partnerships each with different offering materials. However, unlike the litigants in this case who view *Parnes* and *Eisenberg* as antithetical, the Court does not believe that the two conflict; *Eisenberg* does not hold that individual issues with regard to reliance may never be found to predominate and to prevent certification of class actions in securities cases. In some cases, such as in *Parnes*, reliance issues may indeed predominate. This, however, is not the situation this Court finds today. While there are many partnerships in dispute, the ventures in which they invested are so similar, if not identical, and the alleged fraud in each is so similar, if not identical, that this Court holds that individual issues as to liability will not predominate.

It is possible, although not certain, that some class members, like the named plaintiffs, will be subject to a meritorious defense that they did not rely on the June 9, 1994 letter because they did not vote in favor of the sale to Apache. Yet this alone would not prevent them from sharing in a verdict in favor of the class with regard to the fraudulently induced purchase of partnership interests. Furthermore, without delving into or determining the substantive question of whether this group of investors has a cause of action relating to the sale to Apache, as the Court is forbidden from doing on this motion, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178–80, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974), the Court simply notes that the fact that certain plaintiffs did not actually vote in favor of the sale may not necessarily prevent them from recovering for any alleged fraud that caused the sale; a majority of the class members were persuaded supposedly by the entreaties of the defendants and did vote to sell, yet those who did not vote for the sale were required to sell their holdings as well. They may thus have suffered damages arising directly from the alleged fraud.

In any event, the Court finds the main thrust of the plaintiffs' allegations, or, in the parlance of Rule 23, the predominating issue, to be that all class members were the victims of fraud when they purchased and when they sold their interests in oil and gas development partnerships. Accordingly, as to issues concerning liability, plaintiffs have satisfied Rule 23(b)(3).

### 2) The statute of limitations defenses

The statute of limitations period for actions brought under Section 10(b) is found in Section 9(e) of the Exchange Act:

> No action shall be maintained to enforce any liability created under this section, unless brought within one year after discovery of the facts constituting the violation and within three years after such violation.

Defendants argue that the general issue of discovery of the violations is an individual issue that will predominate. The plaintiffs purchased their shares of the partnerships through Zoch and Zoch who sent a letter in November, 1990 discussing possible fraud by

the defendants. Therefore, the defendants claim, issues concerning the named plaintiffs' "discovery" are unique and will also predominate.

Plaintiffs counter that they also plead a RICO violation, which includes a four year statute of limitations that is clearly satisfied. *See Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1130–31 (3d Cir.1988). Furthermore, they argue, there is no question that their cause of action under Rule 10b–5 is timely as to the sale of the assets of the corporation, which occurred in 1994. As to these two contentions, plaintiffs are correct.

▪ The only statute of limitations issue left that might be considered an individual issue is the discovery of the fraud in the offering materials; specifically, that Zoch and Zoch alerted the named plaintiffs and all who purchased their Ridgewood Partnership investments through them as to the possibility of fraud. This should not present a bar to certification, for the Third Circuit in *Hoxworth* approvingly quoted the Ninth Circuit, which held that: "[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases." 980 F.2d at 924 (quoting *Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir.1976)). A nucleus of common questions does exist in this case; even if this statute of limitations defense does later reveal itself to be an individual issue, this Court does not foresee that it will be a *predominating* issue worthy of derailing certification.

3) Choice of law problems

▪ Defendants contend that the individual issues concerning the applicable law, and the application of that law, that will arise from the state law claims of the class members who are located across the nation will predominate. Simply put, this is virtually never a bar to class certification. *See, e.g., Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 403 (D.N.J.1990). Furthermore, it is not at all clear that under New Jersey

choice of law analysis this Court would be required to apply the substantive law of the states where each investor is located. Even if it were, this Court could employ a special master, hold separate hearings or use other procedures to prevent the problem from becoming unwieldy. *cf. Eisenberg,* 766 F.2d at 786.

4) Individual questions of fact over damages

▪ Defendants argue that the damages suffered by each putative class member requires individual proof and that this individual issue predominates over the common issues. Like the issue of reliance and statute of limitations, the Third Circuit has instructed that "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate … If for any reason the district court were to conclude that there would be problems involved in proving damages which would outweigh the advantages of class certification, it should give appropriate consideration to certification of a class limited to the determination of liability." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977).

Here the defendants make no showing that the determination of the class members' damages will be so complicated that it will predominate. It is likely that plaintiffs will primarily rely upon mathematical formulas, presented by experts, to establish the loss suffered by each plaintiff. The Court finds that individual questions as to damages will not predominate.

5) Aggregation of the individual issues

▪ At oral argument, defendants argued that, while perhaps none of the individual issues identified predominates over common issues, when aggregated, those issues do predominate. The Court readily acknowledges that individual issues do exist. Indeed, it is inconceivable that in any class action there would be no individual issues. The question before the Court is whether they predominate. Unfortunately, this question is not susceptible to scientific proofs and

therefore may not be determined with mathematical certainty. The Court must, based on caselaw, evidence presented and arguments mustered by the litigants, predict, at this early stage in the dispute, what issues will eventually predominate. This Court believes that the fundamental issue of this case, namely the allegations of certain defendants' fraud when the securities were originally offered for sale and when certain defendants later sought the sale of the assets of the partnerships, which are common to all putative class members, will predominate. As the number of successful class actions which have been certified and resolved by various courts in the past demonstrates, individual issues that do present themselves, such as reliance and damages, can be handled effectively. If it appears during the litigation that individual issues are predominating, then the Court may exercise the options available to move this dispute forward efficaciously. But, based on the information presented, this Court concludes that common, rather than individual issues identified by defendants, will predominate and thus class certification is appropriate.

### 2. Superiority of Class Action Vehicle

Plaintiffs seeking certification of a damages class action must show not only that common issues predominate over individual issues, but that the class action is the superior means of adjudicating the controversy. "One of the primary considerations in evaluating whether the class action device is superior to other methods for fair and efficient adjudication of the controversy, is the number of persons injured by defendants' alleged wrongful conduct. When there are numerous plaintiffs, class certification avoids taxing the court with a barrage of lawsuits adjudicating the same issues and involving the same defendant." *Zinberg v. Washington Bancorp, Inc.*, 138 . F.R.D. at 410 (citation omitted). In addition, class actions are usually seen as the appropriate vehicle for resolving securities fraud cases because "those who have been injured 'are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive.'" *Id.* (citation omitted).

Here, that the number of class members may be in the hundreds or thousands weighs heavily in favor of certification. It is not clear, though, whether these plaintiffs are in a poor position to seek redress individually. The named plaintiffs', whose holdings total a half-million dollars, have an adequate incentive to bring suit. Depending on the size of the average investment, the putative class members may or may not be in a position to pursue their claims individually.

Yet, because of the size of the class, and because a common nucleus of questions concerning the alleged fraud of the defendants is shared by all members of the class, a class action is the superior means of resolving this dispute.

### CONCLUSION

For the reasons stated above, it is on this twenty-ninth day of January, 1996:

ORDERED that plaintiffs' motion to certify a class consisting of all persons and entities who from April 15, 1986 through and including July 7, 1994 purchased or held one or more limited partnership interests in any of the Ridgewood Partnerships enumerated in the BACKGROUND section of this opinion, is hereby **granted.**

**SO ORDERED.**