David **PATTERSON, Philip McCoy, William Schaefer, and Beverly Schaefer, Plaintiffs–Appellees,**

v.

**BP AMERICA PRODUCTION COMPANY, f/k/a Amoco Production Company, Defendant–Appellant.**

No. 09CA1943.

Colorado Court of Appeals, Div. A.

Feb. 18, 2010.

Law Offices of George A. Barton, P.C., George A. Barton, Kansas City, Missouri; Charles Carpenter, Denver, Colorado, for Plaintiffs–Appellees.

Holland & Hart LLP, Scott S. Barker, Danielle R. Voorhees, Denver, Colorado; Holland & Hart LLP, Rachel A. Yates, Greenwood Village, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

In this dispute over deductions of postproduction costs from royalty payments, defendant, BP America Production Company (BP), formerly known as Amoco Production Company (Amoco), appeals the district court's order certifying a class of approximately 4,000 royalty owners who entered into leases or royalty agreements with BP or its predecessors entitling them to royalty payments on natural gas produced and sold by BP or its predecessors from wells located in Adams or Weld Counties (the Owners). Because we conclude that the district court did not abuse its discretion in certifying the class, we affirm.

## I. Background

In the early 1970s, the named plaintiffs or their predecessors in interest (Named Plaintiffs) entered into lease or overriding royalty agreements under which Amoco, as a party to or assignee of such agreements, had the right to explore for oil and gas within a specified area in either Adams or Weld Counties, in exchange for royalty payments. None of these agreements expressly permitted the deduction from the royalty payments of the costs of making the gas marketable after its extraction, including the costs of transporting the gas from the well heads to its final sale location.

Each of the Named Plaintiffs also signed Oil and Gas Division Orders and Oil and Gas Transfer Orders (Division and Transfer Orders). These Orders provided:

> Settlements for gas shall be based on the net proceeds at the wells, after deducting a fair and reasonable charge for compressing and making it merchantable and for transporting if the gas is sold off the property. Where gas is sold subject to regulation by the Federal Power Commission [or, in one of the Division and Transfer Orders, the Federal Energy Regulatory Commission] or other governmental authority, the price applicable to such sale approved by order of such authority shall be used to determine the net proceeds at the wells.

At the time most of the Named Plaintiffs signed these Orders, gas prices were federally regulated, and therefore, the Named Plaintiffs were paid at either the maximum lawful price or the price specified by contract. The process of deregulation began in the 1980s, and as wells were deregulated, Amoco began to employ a so-called netback method of calculating royalty payments. Under this method, Amoco deducted a proportionate share of the costs incurred to make the gas marketable before paying royalties to the Owners. The royalty checks sent to the Named Plaintiffs, however, did not disclose that such costs were being deducted from their royalty payments. In fact, the Named Plaintiffs presented evidence that they were unaware of these cost deductions until litigation was initiated by Kerr–McGee, a successor in interest to Amoco and BP, seeking to clarify the propriety of making such deductions.

In 2003, the Named Plaintiffs filed a complaint against BP alleging, among other things, that BP had breached the royalty agreements with the Named Plaintiffs by making these cost deductions. The Named Plaintiffs later moved to certify a class of similarly situated royalty owners. BP then moved for partial summary judgment, arguing that many of the Named Plaintiffs' claims were barred by the six-year statute of limitations. The district court did not rule on the

Named Plaintiffs' motion for class certification but granted BP's motion for partial summary judgment. The Named Plaintiffs then appealed to a division of this court.

On appeal, the parties agreed that the six-year statute of limitations applied, but they disagreed as to the applicable accrual statute. The Named Plaintiffs argued that section 13–80–108(6), C.R.S.2009, applied and that their claims accrued when they became aware of BP's alleged breach of their lease agreements, which was in November and December 2003. BP countered that section 13–80–108(4), C.R.S.2009, was the appropriate accrual statute and that the Named Plaintiffs' claims therefore accrued on the various dates on which BP allegedly underpaid royalties, which last occurred in January 1998. In the alternative, BP argued that even if section 13–80–108(6) applied, the Named Plaintiffs' causes of action had accrued when they signed the Division and Transfer Orders, which stated that BP would be employing the netback method of accounting after natural gas was deregulated. Thus, BP contended, even under the Named Plaintiffs' theory of accrual, their claims were still time barred. The Named Plaintiffs replied that BP had actively concealed the relevant and material facts that would have alerted them to the change in accounting methodology. Thus, they asserted, the statute of limitations had been equitably tolled.

The division agreed with the Named Plaintiffs and reversed the district court's order granting partial summary judgment to BP. *Patterson v. BP America Production Co.,* 159 P.3d 634, 639–41 (Colo.App.2006), *rev'd,* 185 P.3d 811 (Colo.2008). The division first held that section 13–80–108(6) applied. *Id.* at 639. Accordingly, it concluded that the Named Plaintiffs' claims did not accrue until they discovered, or should have discovered by the exercise of reasonable diligence, that BP breached their royalty agreements. *See* § 13–80–108(6). The division then rejected BP's alternative argument that summary judgment was proper even if section 13–80–108(6) applied. Specifically, the division held that the information contained in the Division and Transfer Orders was insufficient to provide the Named Plaintiffs with *actual* notice

of the use of the netback method. *Patterson,* 159 P.3d at 640. The division stated that "the terms of the gas covenant could have provided the Royalty Owners with actual notice of BP's use of the netback method only if BP subsequently notified them of the federal deregulation and its intent to begin using the netback method," which did not occur. *Id.* Finally, the division held that there were disputed issues of fact as to whether the Owners *should* have known of the netback methodology based on the Division and Transfer Orders and whether BP's alleged conduct equitably tolled the statute of limitations, thereby precluding the entry of summary judgment. *Id.* at 640–41.

Our supreme court granted certiorari and reversed the division's determination as to the proper accrual statute. Specifically, the court held that section 13–80–108(4) applied and that, therefore, the Named Plaintiffs' claims accrued on the date their royalties became due, not the date on which they discovered the alleged breach of contract. *BP America Production Co. v. Patterson,* 185 P.3d 811, 815 (Colo.2008). The court thus reversed that part of the division's determination and remanded the case. *Id.* The court, however, did not disturb the division's determination that there was a fact question as to whether the statute of limitations had been equitably tolled by BP's alleged fraudulent concealment of its use of the netback method. *Id.*

The Named Plaintiffs then filed a renewed motion for class certification with the district court. They defined the proposed class as:

All persons and entities to whom BP and its predecessors paid royalties or overriding royalties (collectively, "royalties") on natural gas, including natural gas liquids extracted therefrom after it is severed from the wellhead ("natural gas"), produced from wells located in Weld or Adams Counties in Colorado between January 1, 1986, and December 1, 1997 pursuant to leases or overriding royalty agreements which do not expressly authorize the deduction of costs incurred to market such gas after it is severed from the wellhead in the calculation of royalties (collectively, "Royalty Agreements"). The de-

fined Class excludes: (a) the United States of America; (b) Anadarko Petroleum Corporation ("Anadarko"), formerly known as Union Pacific Resources Corporation, and its affiliates; (c) Kerr–McGee Onshore, Inc. ("Kerr–McGee"), formerly known as Kerr–McGee Rocky Mountain Corporation and formerly known as HS Resources, Inc., and Kerr–McGee's affiliates; and (d) the State of Colorado.

The district court held an evidentiary hearing on the issue of class certification. The evidence presented included (1) affidavits from the Named Plaintiffs asserting that BP never provided information to them that postproduction costs were being deducted from their royalty payments and that they had no knowledge of how BP calculated the royalties paid other than what was in the royalty reports; (2) copies of brochures sent to the Owners purporting to explain the royalty checks but not referencing any postproduction cost deductions; (3) internal Amoco communications recommending a change to the format of the royalty checks to indicate clearly the postproduction deductions being taken, but warning of the potential for increased litigation if Amoco were to make that change; and (4) deposition testimony from a former Amoco employee confirming that the recommendation to change the format of the royalty checks was not adopted and that the deductions were not disclosed in the royalty checks.

Thereafter, the district court issued a lengthy order analyzing the evidence presented and finding by a preponderance of the evidence that the Named Plaintiffs had met their burden to establish the requirements for class certification pursuant to C.R.C.P. 23. The district court thus granted the motion for class certification.

BP then petitioned to file an interlocutory appeal with this court pursuant to C.A.R. 3.3. We granted the petition and received supplemental briefs from the parties. We now affirm the district court's class certification order.

## II. General Principles of Class Certification and Standard of Review

■ "The basic purpose of a class action is to eliminate the need for repetitive filing of many separate lawsuits involving the interests of large numbers of persons and common issues of law or fact by providing a fair and economical method for disposing of a multiplicity of claims in one lawsuit." *Mountain States Tel. & Tel. Co. v. District Court,* 778 P.2d 667, 671 (Colo.1989). Thus, such actions are favored, and our supreme court has held that C.R.C.P. 23 should be liberally construed to advance these policies. *Farmers Ins. Exch. v. Benzing,* 206 P.3d 812, 818 (Colo.2009).

■ A plaintiff seeking class certification bears the burden of demonstrating, by a preponderance of the evidence, that the requirements of C.R.C.P. 23 have been met. *Jackson v. Unocal Corp.,* 231 P.3d 12, 17–18 (Colo.App. 2009). C.R.C.P. 23(a) establishes four prerequisites to the maintenance of a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class. If these prerequisites are satisfied, then the plaintiff must show that the class meets the requirements of one of the subsections of C.R.C.P. 23(b).

Here, the Named Plaintiffs sought certification under C.R.C.P. 23(b)(3). Certification is appropriate under that rule if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. C.R.C.P. 23(b)(3).

■ Because C.R.C.P. 23 is almost identical to Fed.R.Civ.P. 23, we may look to case law regarding the federal rule for guidance in interpreting the state rule. *LaBerenz v. American Family Mut. Ins. Co.,* 181 P.3d 328, 333 (Colo.App.2007).

■ To establish the requisite numerosity, a party seeking class certification must

show that the class is sufficiently large to render joinder impracticable. *Id.* at 334. The class, however, need not be so ascertainable that every potential member can be identified at the commencement of the action. *Id.* Rather, the description of the class must be sufficiently precise to allow the court to determine whether a particular individual fits within it. *Id.* It is not appropriate at the class certification stage, however, to deny certification on the ground that the class definition is so broad as to include people who cannot sustain the burden of proving claims pursued by the class as a whole. *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 384 (D.Colo.1993). Such a requirement would necessitate a hearing on the merits as part of the class certification determination, which courts are not authorized to undertake. *Id.* Thus, the fact that the class may initially include members who do not have claims or who do not wish to assert claims against the defendant "is not important at this stage of the litigation, unless it can be shown that most, if not all, of the potential class members have no claims to be asserted by the class representatives." *Id.*

■■■■ To establish typicality, class representatives must demonstrate that "there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class." *Id.* at 385. The positions of the class representatives and the putative class members need not be identical, and the requirement of typicality may be satisfied even though varying fact patterns support the claims or defenses of individual class members, and even though there is disparity in the damages claimed by the class representatives and the putative class members. *Id.* Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 640 (D.Colo.1986).

■■■■ To meet the predominance requirement, class representatives must show that questions of law or fact common to the class predominate over those that affect only individual members. C.R.C.P. 23(b)(3). "The focus for the trial court is whether the proof at trial will be predominantly common

to the class or primarily individualized." *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 348 (Colo.App.2005). The predominance requirement necessitates "a fact-driven, pragmatic inquiry guided by the objective of judicial efficiency and the need to provide a forum for the vindication of dispersed losses." *Id.* Thus, the class representatives must advance "a theory by which to prove or disprove 'an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.' " *Benzing*, 206 P.3d at 820 (quoting *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 580 (D.Minn.1995)).

■■■■ A court must generally accept as true the allegations in support of class certification. *Id.* at 818. Furthermore, "although the court may analyze the substantive claims and defenses that will be raised to determine whether class certification is appropriate, it cannot prejudge the merits of the case." *Id.* Thus, the court may not determine whether the class will ultimately succeed in establishing each element necessary to prove its claims. *Id.* at 820.

■■■■ Whether to certify a class action lies within the district court's discretion, and we will not disturb that court's decision absent an abuse of its discretion. *Medina*, 121 P.3d at 347. "An abuse of discretion occurs where the trial court's decision is manifestly arbitrary, unreasonable, or unfair, or when the trial court applies incorrect legal standards." *Id.*

Finally, we note that class certification orders may be altered or amended before a decision on the merits, should later events suggest that it is appropriate to do so. C.R.C.P. 23(c)(1); *see also Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 550 (D.Colo.1998) (noting that a class always can be decertified or the class description altered if later events suggest that it is appropriate to do so). Subclasses can also be created when appropriate. C.R.C.P. 23(c)(4)(B).

### III. Application

Turning now to the facts of this case, we note as a preliminary matter that BP does

not contest that the Named Plaintiffs have demonstrated that there are common issues of fact or law involved in this case that satisfy the commonality requirement of C.R.C.P. 23(a)(2). Nor does BP dispute that the class representatives would adequately protect the interests of the unnamed class members, as required by C.R.C.P. 23(a)(4). And BP does not argue, at least directly, that the Named Plaintiffs have failed to establish the superiority requirement of C.R.C.P. 23(b)(3), although we recognize that the superiority and predominance inquiries are, to some extent, interrelated. We proceed then to those C.R.C.P. 23 elements that BP directly addresses.

### A. C.R.C.P. 23(a)

BP first contends that the district court abused its discretion in certifying a class here because the Named Plaintiffs failed to satisfy the numerosity and typicality elements of C.R.C.P. 23(a). We are not persuaded.

### 1. Numerosity

BP does not argue that the proposed class is insufficient in size to merit treatment as a class. Rather, it contends that because the netback accounting method was implemented over time as the gas industry was gradually deregulated, rather than simultaneously for all of the Owners, the class as defined includes members who had no costs deducted and, thus, is overly broad. BP further argues that because the industry was not completely deregulated until 1993, and because BP did not uniformly convert to netback accounting, it "has no practical means of determining a date when all class members' royalties were calculated on a netback." This, BP appears to assert, would preclude ready determination of the members of the class. Finally, BP asserts that its accounting data from 1986 through 1992 are "missing or, where available, buried in reams of unrelated paper records," and, therefore, it cannot perform the accounting calculations necessary to defend itself. We reject these arguments in turn.

■ First, as noted above, and contrary to BP's argument, a class need not be so

ascertainable that every potential member can be identified at the outset of the litigation. *LaBerenz*, 181 P.3d at 334. Rather, if the general outlines of the class are determinable, a class may be found to exist. *Cook*, 151 F.R.D. at 382. The ultimate burden of proving membership in the class, however, will rest with the individual Owners themselves. *See id.* at 384.

■ Here, we agree with the district court that the class is defined with sufficient precision such that each class member could be identified through the application of objective criteria that do not require an individualized determination as to whether BP is liable to that particular class member. Specifically, these objective criteria require a showing that (1) the potential class member was paid royalties by BP (or its predecessors in interest) on natural gas produced from wells located in Adams and Weld Counties during the defined class period and then processed at certain plants, and (2) such royalties were paid pursuant to agreements that did not expressly authorize the deduction of postproduction costs. In addition, the class definition precisely identifies those persons and entities who are excluded from the class.

Second, BP's contention that the class definition is overly broad because it contains members who could not ultimately establish their claims is the same argument that was rejected in *Cook*, 151 F.R.D. at 383, because it would require the court to determine such class members' claims on the merits, which the court may not do. *Id.* We agree with the *Cook* court's analysis of this issue and follow it here. *See also Bowen v. City of New York*, 476 U.S. 467, 478–81, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (rejecting the defendants' argument that it was error to include in a class claimants who failed to bring suit within the applicable limitations period, where the statute of limitations was tolled based on secretive conduct by the defendants that prevented the claimants from knowing that their rights were violated).

Third, BP's contentions that the absence of accounting data and the fact that the netback method was not uniformly implemented preclude ready determination of class members

and also prevent BP from defending itself are contrary to the evidence in the record. For example, the Named Plaintiffs presented expert testimony from a certified public accountant that Amoco was using the netback method, albeit perhaps not uniformly, throughout the entire class period. The expert further testified that using the data he had received, he could determine whether any deductions had been taken and the amount of any underpayment, and he could allocate those amounts to each class member, each well, and each geographic area.

For these reasons, we conclude that the district court did not abuse its discretion in finding that the proposed class satisfies the numerosity requirement.

### 2. Typicality

BP next asserts that the Named Plaintiffs' claims are not typical of the putative class members' claims because the class definition includes, in addition to individual royalty owners, oil and gas companies and governmental entities. Specifically, BP contends that the Named Plaintiffs' claims are atypical because unique defenses may apply to such oil and gas companies and governmental entities. For example, BP contends that at least one of these oil and gas companies used the netback method in paying royalties to its own royalty owners and therefore could not claim actual ignorance of the deregulation of natural gas. BP further asserts that the Named Plaintiffs may not be empowered to act on behalf of the governmental entities. Again, we are unpersuaded.

■■■■ As noted above, the Named Plaintiffs' positions need not be identical to those of the other class members. *Cook,* 151 F.R.D. at 385. Rather, the Named Plaintiffs' claims must arise out of the same alleged course of conduct and must be based on the same theories as those of the putative class members. *Schwartz,* 178 F.R.D. at 552. Here, both the Named Plaintiffs' claims and those of the putative class members arise from BP's alleged underpayment of royalties through use of the netback accounting method and the alleged concealment from the Owners of the deduction of postproduction costs. BP has presented no evidence that its

conduct differed in any way with respect to the oil and gas companies or the governmental entities.

■■■■ Moreover, to the extent that BP's contention that unique defenses may apply to the oil and gas companies and the governmental entities asks us to prejudge issues going to the ultimate merits of the litigation (e.g., determining at this stage that the oil and gas companies had actual knowledge of deregulation and BP's use of the netback method), as opposed to determining issues concerning the C.R.C.P. requirements, as noted above, we may not properly do so at this stage of the proceedings. *Cook,* 151 F.R.D. at 386; *cf. Jackson,* 231 P.3d at 17–18 (although district courts must avoid prejudging the merits of a case at the class certification stage, they may analyze the parties' substantive claims and defenses without determining whether the class will ultimately succeed in establishing each element necessary to prove its claims) (citing *Benzing,* 206 P.3d at 818, 820).

Finally, with respect to BP's assertion that the Named Plaintiffs may not be empowered to act on behalf of the governmental entities, BP makes no argument and cites no authority in support of this assertion, and we are aware of no such authority. Accordingly, we decline to address this contention. *Erskine v. Beim,* 197 P.3d 225, 232 (Colo.App.2008) (declining to address the defendants' contention of error in striking an expert, where the defendants made no argument and cited no authority as to why the trial court's ruling was an abuse of discretion).

For these reasons, we conclude that the district court did not abuse its discretion in holding that the Named Plaintiffs satisfied the typicality requirement of C.R.C.P. 23(a).

### B. C.R.C.P. 23(b)

Finally, BP contends that the district court abused its discretion in certifying a class because individual issues concerning fraudulent concealment predominate over issues common to the class, and therefore, the Named Plaintiffs failed to satisfy the requirements of C.R.C.P. 23(b)(3). Specifically, BP asserts that the district court will need to

conduct individual mini-trials to determine whether (1) a particular Owner was actually ignorant of the material information BP is alleged to have concealed; (2) the Owner relied and acted based on that concealment; and (3) the Owner exercised due diligence in trying to discover the concealment. We disagree.

 To prove that their claims against BP are not time barred, the Named Plaintiffs must show that the statute of limitations was equitably tolled by BP's conduct. The elements of equitable tolling are:

(1) [T]he party to be estopped must know the relevant facts; (2) the party to be estopped must intend that his or her conduct be acted on, or act in a manner that the party asserting estoppel believes the party to be estopped has such intent; (3) the party asserting estoppel must be ignorant of the relevant facts; and (4) the party asserting estoppel must rely on the other party's conduct to his or her detriment.

*Olson v. State Farm Mut. Auto. Ins. Co.,* 174 P.3d 849, 858 (Colo.App.2007) (citing *Dove v. Delgado,* 808 P.2d 1270, 1275 (Colo.1991)).

Here, BP does not contest that the first and second of these elements can be proved largely by evidence common to the class. BP asserts, however, that each Owner must present individualized evidence of actual ignorance and reliance and that this individualized evidence will predominate over issues of law or fact common to the class. The Named Plaintiffs respond that, on the facts of this case, ignorance and reliance can be proved by common evidence on a classwide basis and that such common evidence predominates over any individual evidentiary issues. The district court agreed with the Named Plaintiffs, and we perceive no abuse of discretion in that ruling.

In holding that common evidence could be presented to demonstrate the Owners' ignorance of and reliance on BP's concealment of the fact that it was deducting postproduction costs, the district court noted that Colorado law allows these elements of fraudulent concealment to be inferred from circumstantial evidence. The court also cited cases from other jurisdictions in which reliance has been

presumed when sufficient evidence was presented to demonstrate the improper concealment of a material fact. *See, e.g., Varacallo v. Massachusetts Mut. Life Ins. Co.,* 332 N.J.Super. 31, 752 A.2d 807, 816 (App.Div. 2000); *Baughman v. State Farm Mut. Auto. Ins. Co.,* 88 Ohio St.3d 480, 727 N.E.2d 1265, 1275 (2000).

In *Benzing,* 206 P.3d at 823, our supreme court was presented with the question of whether reliance could be presumed in a case in which a defendant withheld material information that it was under a duty to disclose. Because that argument was asserted for the first time on appeal, however, the court did not address the issue, although it noted that there are arguments both in favor of and against applying such a presumption. *Id.* at 823–24.

Many courts from other jurisdictions that have addressed this question have held that presuming or inferring reliance is proper when plaintiffs are able to establish material misrepresentations to the class on a common basis. *See, e.g., Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 924 (3d Cir.1992) ("Once the claims were narrowed to the uniform course of conduct engaged in by Blinder, Robinson in omitting [certain material information], the district court could reasonably find that common questions predominated."); *Vasquez v. Superior Court,* 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964, 973 (1971) ("[I]f the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class. Defendants may, of course, introduce evidence in rebuttal.") (footnote omitted); *Weinberg v. Hertz Corp.,* 116 A.D.2d 1, 499 N.Y.S.2d 693, 696 (N.Y.App.Div.1986) ("[O]nce it has been determined that the representations alleged are material and actionable, thus warranting certification, the issue of reliance may be presumed, subject to such proof as is required on the trial."), *aff'd,* 69 N.Y.2d 979, 516 N.Y.S.2d 652, 509 N.E.2d 347 (1987); *Baughman,* 727 N.E.2d at 1275 (if plaintiffs could establish by common proof or form documents that the defendant had made a material misrepresentation or was required but failed to make a material disclosure,

then "at least a presumption of reliance would arise as to the entire class, thereby obviating the necessity for individual proof on this issue"); *Cope v. Metropolitan Life Ins. Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001, 1008 (1998) ("It is not necessary to establish inducement and reliance upon material omissions by direct evidence. When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements."). *But see Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363–64 (11th Cir.2002) (noting that presumption of reliance has not been extended outside the context of securities cases), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 A.2d 200, 234–36 (2000) (because class members with claims under the state consumer protection act would individually need to prove reliance on defendant's alleged misrepresentations and material omissions, class certification was inappropriate); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693–94 (Tex.2002) (although the court noted that reliance ordinarily can be proved on a classwide basis with evidence generally applicable to all class members, the court concluded, in the case before it, that there was no evidence of uniform reliance across the class).

■ Presuming or inferring reliance is particularly compelling when there is evidence that a defendant intentionally withheld information to induce the very action that the plaintiffs took. In *Varacallo*, 752 A.2d at 812, for example, the plaintiffs alleged that the defendant induced them to purchase insurance policies by distributing overly optimistic literature, while omitting from that literature information showing that a dividend rate was unsustainable in the long term and concealing the fact that the defendant intended to reduce dividends that it knew were unsupportable. The plaintiffs then sought class certification. *Id.* The trial court denied the plaintiffs' motion, concluding that "individualized 'mini trials'" would be re-

quired for each policyholder because each may have had different interactions with the insurance brokers and agents. *Id.* at 814–15.

The plaintiffs appealed, and the appellate court reversed. *Id.* at 816–17. The court first noted that the plaintiffs had asserted that the insurance brokers and agents had no knowledge of the concealed facts and, thus, could not have told the plaintiffs any more than what was represented in the literature provided. *Id.* at 816. As a result, the court observed that there was no evidence that any individual sales pitches went beyond what was in the literature. *Id.* Moreover, the court stated that even if some or many of the policyholders relied on such sales pitches, "the reliance element in a common law fraud claim may be satisfied by proof of indirect reliance where a party deliberately makes 'false representations ... with the intent that they be communicated to others for the purpose of inducing the others to rely upon them.'" *Id.* at 816 (quoting *Metric Investment, Inc. v. Patterson*, 101 N.J.Super. 301, 244 A.2d 311, 314 (App.Div.1968)). Thus, the court held that, for purposes of certifying a class, the plaintiffs were not required to offer direct proof that the entire class relied on the defendant's representation that omitted material facts, particularly where the plaintiffs had established that the defendant withheld these facts "for the purpose of inducing the very action the plaintiffs pursued." *Id.* at 817.

■ These authorities demonstrate that, at a minimum, fraud can be proved through circumstantial evidence and that direct evidence of ignorance and reliance is not necessarily required in fraud or fraudulent concealment cases. To that extent, Colorado case law is clearly in accord. *See, e.g., Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599, 602 (Colo.1984) ("We have held repeatedly that fraud may be inferred from circumstantial evidence. Direct evidence of reliance, one of the elements of fraudulent concealment, is not required.") (citations omitted). Moreover, we are aware of no authority, and the parties have cited none, that precludes application of these settled principles in the context of a class action.

Accordingly, we conclude that even without a presumption of reliance, named plaintiffs in a class action may demonstrate ignorance or reliance on a classwide basis, using circumstantial evidence that is common to the class.

Finally, the great majority of courts to have addressed the question have held that individual issues regarding applicable statutes of limitations do not necessarily defeat class certification. *See, e.g., Hoxworth,* 980 F.2d at 924 (rejecting defendants' claim that individualized determinations are paramount because a subset of class members' claims are time barred and noting the "nearly unanimous" view that possible differences in the application of a statute of limitations to individual class members, including named plaintiffs, do not preclude class certification as long as the requirements of Rule 23 are satisfied); *Gunter v. Ridgewood Energy Corp.,* 164 F.R.D. 391, 399 (D.N.J.1996) (even if a statute of limitations issue revealed itself to be an individual issue, it would not be a predominating issue precluding class certification); *In re Revco Securities Litig.,* 142 F.R.D. 659, 663 (N.D.Ohio 1992) (the possibility of differences in the application of the statute of limitations to individual class members would not preclude class certification as long as the requirements of Rule 23 were otherwise met); *Hamilton v. Ohio Savings Bank,* 82 Ohio St.3d 67, 694 N.E.2d 442, 456–58 (1998) (noting that "the near unanimous weight of authority" rejects the notion that statute of limitations issues predominate over common issues in securities fraud actions, and holding that the trial court abused its discretion by denying class certification because the class included members who would need to rely on equitable tolling to overcome the statute of limitations). Rather, the question in such cases is whether there is a sufficient nucleus of common issues. *See Gunter,* 164 F.R.D. at 399; *Hamilton,* 694 N.E.2d at 457.

Applying the foregoing principles, the question before us becomes whether the asserted nucleus of common issues in this case predominates over the asserted individual issues. To make such a determination, a court must first identify the relevant factual and legal issues involved in the case and determine which are susceptible of common proof and which will require individualized evidence. *See Cook,* 151 F.R.D. at 388.

■■■ In light of the legal principles discussed above, the record, and the parties' assertions on appeal, we agree with the district court's determination that the following facts and issues appear to be susceptible of common proof in this case:

- The manner in which BP employed the netback method;
- BP's decision not to disclose the netback method and the information that BP chose to disclose;
- The content of the form documents and other communications sent to the Owners, which the district court found was uniform;
- The content of the royalty brochures and royalty reports sent to the Owners, which never disclosed the deduction of the postproduction costs;
- The content of the Division and Transfer Orders, which stated only that postproduction costs would be deducted once the gas wells were deregulated, and whether BP ever informed the Owners that such deregulation had occurred;
- Whether the Owners should have known of BP's netback method based solely on the information contained in the Division and Transfer Orders;
- Whether the method of accounting employed by BP could be determined from looking at the generally uniform royalty statements and checks, or whether such information was obscured, thereby raising at least an inference that the Owners were prevented from discovering BP's use of the netback method; and
- The Owners' reliance and lack of knowledge, which the Named Plaintiffs will endeavor to show through BP's decision not to disclose information regarding the cost deductions, despite a recommendation from its employees that it do so because of, among other things, the risk of increased litigation, and through the fact that no lawsuits were filed in the absence of such disclosure.

In particular, the Named Plaintiffs have indicated that they will rely on the foregoing common evidence to prove that BP intentionally chose not to disclose the netback method precisely to avoid the risk of increased litigation were it to do so. This evidence, in turn, would allow a reasonable inference that BP obtained exactly the result that it intended, namely, ensuring the Owners' lack of knowledge and preventing them from filing lawsuits, which, the Named Plaintiffs would argue, establishes their equitable tolling claims. *See Varacallo*, 752 A.2d at 817 (holding that, for purposes of certifying a class, the plaintiffs were not required to offer direct proof that the entire class relied on the defendant's representation that omitted material facts, where the plaintiffs had established that the defendant withheld these facts for the purpose of inducing the very action the plaintiffs pursued).

Conversely, the record shows that individualized evidence may be required regarding the following facts and issues:

- Particular Owners' actual knowledge of the change in accounting methodology;
- Whether individual Owners read the Division and Transfer Orders, which would arguably be relevant to issues of reliance and causation;
- The timing of the switch from maximum allowable payments to the netback method and the deduction of postproduction costs for any given well, which may be relevant to the amount of damages incurred by an individual Owner; and
- The amount of damages, if any, suffered by a particular Owner.

Weighing these issues, the district court concluded that the Named Plaintiffs "demonstrated that they will present evidence which is common to all of BP's natural gas production in Adams and Weld Count[ies], Colorado, to prove their case on behalf of the entire Class, with respect both to the fraudulent concealment issues and the royalty underpayment issues involved in this case." On the record presented, we conclude that the district court did not abuse its discretion in so finding. *See, e.g., Cook*, 151 F.R.D. at 388–89 (comparing issues susceptible of common proof with individual issues and determining that despite existence of some individual issues, common issues predominated); *Joseph*, 109 F.R.D. at 641–42 (same).

Specifically, although BP presented evidence to show that a few Owners raised questions or concerns regarding BP's accounting methods, we perceive no abuse of discretion in the district court's determination that this evidence failed to show that individualized evidence from every Owner would be required to establish whether each Owner knew or should have known that BP was using the netback method. BP's evidence consisted of correspondence from or regarding only five Owners, only some of which addressed the issue of postproduction costs, and six Division and Transfer Orders in which certain Owners had either added language or deleted language, again not always directly relating to postproduction costs. This evidence shows no more than that a handful of Owners had expressed concerns relating to any potential change in BP's accounting methods. In these circumstances, we agree with the district court that in a class of approximately 4,000 members, such limited evidence does not undermine a finding of predominance. As noted above, individual issues exist in virtually every class action. The mere fact that such individual issues exist is not alone sufficient to defeat class certification. *See, e.g., Jackson*, 231 P.3d at 26 ("Variations in damages suffered by class members often occur in mass environmental torts, and do not prevent class certification as a matter of law."); *Hamilton*, 694 N.E.2d at 457 ("It is conceivable that a significant amount of time may be spent in this case litigating questions affecting only individual members of the classes. However, clockwatching is neither helpful nor desirable in determining the propriety of class certification.").

Nor do we agree with BP's assertion that the district court misapplied the prior division's opinion by failing to consider the effect of the Division and Transfer Orders on the individualized proof that would be required from each Owner. Specifically, BP correctly notes that the prior division held that there is a disputed issue of fact as to whether the Owners *should have known* of the netback

method based on the Division and Transfer Orders. *Patterson*, 159 P.3d at 640. BP contends that the district court ignored this holding and erroneously relied solely on the division's determination that the Division and Transfer Orders, standing alone, did not provide the Owners with *actual* notice of BP's use of the netback method. For several reasons, we disagree.

First, the district court expressly found that "the issues relating to BP's Division and Transfer Orders will primarily involve common questions of law and fact because all of the [Owners] executed instruments containing the same gas settlement language." We are unwilling to assume, as does BP, that, by "issues," the court was referring solely to issues of actual notice, as opposed to what the Named Plaintiffs should have known.

Second, even if, as BP contends, the district court focused solely on issues of actual notice, as discussed above, the Named Plaintiffs, on the one hand, offered substantial common, albeit circumstantial, evidence tending to negate a claim that they should have known of BP's use of the netback method based on the Division and Transfer Orders. BP, on the other hand, has pointed only to several isolated instances in which individual Owners raised questions or concerns regarding the language in the Division and Transfer Orders. For the reasons set forth above, such limited evidence is insufficient to allow us to conclude that the district court abused its discretion in finding that common issues of law and fact predominate here.

Finally, BP points to *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371, 379 (Colo.App. No. 09CA1465, Nov. 12, 2009), in support of its argument that courts cannot presume reliance and causation in common law fraud cases. *Garcia* is distinguishable for at least two reasons. First, unlike in *Garcia*, because the record here contains substantial circumstantial evidence that can be applied on a classwide basis to support allegations of ignorance and reliance, we need not presume reliance. Second, *Garcia* is distinguishable on its facts. *Garcia* addressed a situation in which the proposed class was made up of people who had individually negotiated with sales representatives from various car deal-

erships to purchase new cars. *Id.* at 380. Although the putative class members each received uniform written communications that they alleged were misleading, the class members also had unique face-to-face encounters with the car salespeople. *Id.* Such encounters, the division concluded, would require individualized evidence, and, thus, the division held that the district court erred in certifying a class without rigorously analyzing whether such individualized evidence affected the question of predominance. *Id.*

Here, in contrast, the Owners generally received only uniform written communications from BP. Moreover, BP has presented no evidence to suggest that any more than a handful of Owners had individual interactions with BP representatives, and the district court clearly considered this evidence. Accordingly, unlike in *Garcia*, we cannot conclude that the district court abused its discretion in finding that common issues predominate.

### IV. Conclusion

For these reasons, the district court's order granting class certification to the Named Plaintiffs is affirmed, and this case is remanded to the district court for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge WEBB concur.