**BP AMERICA PRODUCTION COMPANY, f/k/a Amoco Production Company, Petitioner**

v.

**David PATTERSON, Philip McCoy, Donald Kanzler, and Shirley Kanzler, Respondents.**

No. 06SC330.

Supreme Court of Colorado, En Banc.

June 9, 2008.

Holland & Hart, LLP, Scott S. Barker, Marcy G. Glenn, Denver, Colorado, Attorneys for Petitioner.

Charles Carpenter, Denver, Colorado, George A. Barton, Kansas City, MO, Attorneys for Respondents.

Fulbright & Jaworski, L.L.P., Ken Wonstolen, Denver, Colorado, Attorneys for Amicus Curiae Colorado Oil & Gas Association.

Justice COATS delivered the Opinion of the Court.

BP America sought review of the court of appeals' judgment reversing an order of partial summary judgment in its favor. *See Patterson v. BP Am. Prod. Co.*, 159 P.3d 634 (Colo.App.2006). The district court found that the claims of the respondent royalty owners for underpayment of natural gas royalties accrued when the payments became due and were therefore barred by the applicable statute of limitations. The court of appeals, however, found these claims to be governed by a different provision of the statute, postponing accrual of the royalty owners' claims until breach of the agreement was, or should have been, discovered.

Because these statutory accrual provisions, when properly construed, mandate that the respondents' claims for monthly underpayments be considered to have accrued on the date the royalties actually became due, rather than only upon the discovery of a contrac-

tual breach, the judgment of the court of appeals is reversed, and the case is remanded with directions to reinstate the district court's order of partial summary judgment.

## I.

In 2003, David Patterson, Philip McCoy, Donald Kanzler, and Shirley Kanzler (collectively, "royalty owners") filed a complaint against BP America Production Company, alleging, among other things, that during the period between 1971 and 1997, BP had underpaid the royalties required by their lease agreements. According to the complaint, the royalty owners entered into lease agreements with BP (formerly Amoco Production Company), entitling BP to extract natural gas from wells on the royalty owners' properties and obligating BP to pay the owners royalties in exchange. Monthly royalty payments were made between the early 1970s and January 1998, but these payments were allegedly underpaid.

BP moved for partial summary judgment on the grounds that many of these claims were barred by the applicable statute of limitations. The parties agreed that a six-year statute of limitations applied,[1] but they disagreed about the applicable accrual provision. Characterizing each claim as a cause of action for money owed,[2] BP contended that each claim for underpayment accrued when the monthly payment that was allegedly underpaid came due. Characterizing the cause of action, by contrast, as one for the breach of an express or implied contract or agreement,[3] the royalty owners contended that their claims did not accrue until the underpayments were actually discovered, near the end of 2003.

The district court found it clear from the statutory language itself that the claims fell within the statutory provision for causes of action accruing on the date a debt, obligation, money owed, or performance becomes due. Since the district court also found that the royalty payments were due each month and that each alleged monthly underpayment came due more than six years before the

---

1. *See* § 13–80–103.5(1)(a), C.R.S. (2007).

2. *See* § 13–80–108(4), C.R.S. (2007).

3. *See* § 13–80–108(6), C.R.S. (2007).

commencement of this action, it granted summary judgment for BP with regard to those claims.

On direct appeal by the royalty owners, the court of appeals reversed. The court of appeals found the language of the potentially applicable accrual provisions to be "broad and overlapping," and it found the language of both of the provisions relied on by the respective parties to apply to these claims. Unable to find any other reason to apply one as opposed to the other accrual provision, the court of appeals invoked a rule favoring the longer of two equally applicable statutes of limitations; and after accepting the parties' agreement that a six-year statute of limitations applied, regardless of the point of accrual, it found the accrual-upon-discovery provision to necessarily provide the longer limitations period. The court of appeals therefore remanded for a factual determination when the royalty owners should have discovered the breach.

BP petitioned this court for a writ of certiorari.

## II.

In its codification of the limitations periods for personal actions, the General Assembly has specified the accrual dates for a wide variety of civil actions. *See* § 13–80–108, C.R.S. (2007) ("When a cause of action accrues."). Both subsections (4) and (6) of that statute can reasonably be interpreted to provide an accrual date for the breach of a contract or agreement requiring the payment of a determinable amount of money at a determinable point in time: the former applying by its own terms to actions "for debt, obligation, money owed, or performance," and the latter applying to actions "for breach of any express or implied contract, agreement, warranty, or trust." Because each subsection mandates a different point of accrual, and therefore a different date on which the applicable limitation period will expire, they appear to be in conflict.

To the extent that both provisions can reasonably be interpreted to apply to the claims at issue here, they stand in relation to each other as a general provision and a special or specific provision. Subsection 108(6) could apply to this cause of action only because the instant claims seek to recover for breach of a contract generally. Subsection 108(4) could apply only because the instant claims seek, more particularly, to recover for a specific kind of breach, manifesting as a failure to pay a determinable amount of money when it contractually becomes due. When potentially conflicting statutes are related in this way, the General Assembly itself dictates that they must be construed, if possible, to give effect to both; but if, after application of acceptable rules of construction, they remain irreconcilable, without evidence of a legislative intent for the more recent to displace the less recent of the two, the specific provision must prevail over the general provision. *See* § 2–4–205, C.R.S. (2007).

The legislature itself instructs us that in enacting a statute, it must be presumed to have intended that the entire statute be effective. § 2–4–201(b), C.R.S. (2007). Furthermore, a provision existing as part of a comprehensive statutory scheme must be understood, when possible, to harmonize the whole. *Frank M. Hall & Co. v. Newsom,* 125 P.3d 444, 448 (Colo.2005); *cf. Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 (Colo. 1991) ("City charters and ordinances pertaining to the same subject matter are to be construed in pari materia to ascertain legislative intent and to avoid inconsistencies and absurdities."). The legislature is also presumed to intend that the various parts of a comprehensive scheme are consistent with and apply to each other, without being required to incorporate each by express reference in the other. *See Martinez v. People,* 69 P.3d 1029, 1033 (Colo.2003); *see generally* 2B Norman J. Singer, *Sutherland Statutory Construction,* § 51.02, at 188 (6th ed. 2000) ("Provisions in one act which are omitted in another on the same subject matter will be applied when the purposes of the two acts are consistent.").

The accrual provisions at issue here not only deal with the same subject matter and exist as part of a single comprehensive statutory scheme; they were actually enacted as part of the same project to consolidate, simplify, and make uniform the periods of limitation on civil actions, *see* Colo. Sess. Laws 1986, ch. 114, § 13–80–108 at 699 (repealing and reenacting entire article with

amendments); *cf. Dawson v. Reider,* 872 P.2d 212, 215 (Colo.1994)(recounting history of project), and appear alongside each other as subparts of the same statutory section. While it would undoubtedly have been clearer to expressly limit the broad contract language of subsection 108(6) by excepting from it those specific contractual actions already dealt with, two sentences earlier in subsection 108(4), the legislature's awareness of both provisions and its intent that they both have meaning and exist as complementary components of a consistent whole can be imputed as a matter of construction.

Perhaps of even greater significance, however, by parallel construction and language, these two accrual provisions clearly, if only implicitly, are substantially related to other provisions in the scheme, which do expressly distinguish the limitation period for breach of contracts generally from the period allowed for recovery of liquidated or determinable amounts of money, once they are contractually due and owing. While section 13–80–108 specifies the accrual dates for various causes of action, the limitation period applicable to each such action must be found elsewhere in the statutory scheme. Both a limitation period and an accrual date are necessary to determine when the statute of limitations on any particular cause of action will run.

In language very similar to that of subsection 108(6), section 13–80–101(1)(a), C.R.S. (2007), provides a three-year limitation period for "all contract actions," *except* those specific kinds of contract actions singled out for a six-year limitation period elsewhere. In language similar to that of subsection 108(4), section 13–80–103.5(1)(a) designates a six-year limitation period for "all actions to recover a liquidated debt or an unliquidated, determinable amount of money due," as well as "any instrument securing the payment of or evidencing any debt." When subsection 108(4) and section 103.5 were both adopted, in 1986, the latter's application to "all actions of debt founded upon any contract," evidenced an even closer parallel in phraseology. And unlike the accrual provisions of section 108, which merely imply that their reference to actions for breach of any express or implied contract was never intended to include those particular actions for debt or money owed, or for the balance due on an open account, which had been singled out for special treatment in the preceding two sentences; the three-year limitation period of section 101(1)(a) makes express that the phrase "all contract actions" does not include those actions "otherwise provided [for] in section 13–80–103.5."

When the statutory scheme is considered as a whole, it manifests a clear intent to prescribe a six-year limitation period for actions to recover a determinable amount of money owed, whether by contractual agreement or not, which accrues on the date the debt becomes due. By contrast, all other actions for breach of contract are subject to a three-year limitation period, which does not accrue until the breach is, or reasonably should have been, discovered. Apart from the language of the statutory scheme itself, the rationale for allowing only a limited and specified time period to discover breaches and damages that should be obvious upon regular and diligent inspection is intuitively obvious.

█ Had these two accrual provisions not been reconcilable by construing the scheme as a whole, however, subsection 108(4), as the more specific of the two, would nevertheless prevail. *See* § 2–4–205. In *Regional Transportation District v. Voss,* we acknowledged and applied a rule favoring the application of the longer, rather than the shorter, of two equally applicable statutes of limitation. 890 P.2d 663, 668 (Colo.1995). Much like analogous rules of choice applicable to statutes or contractual provisions in other contexts, this rule is a rule of last resort. *See id.; cf. People v. Thoro Prods. Co.,* 70 P.3d 1188, 1198–99 (Colo.2003) (holding rule of lenity in the penal context to be a rule of last resort); Thomas F. Segalla, *Couch on Insurance* § 22:16 (3d ed.1995) (characterizing as a rule of last resort the familiar principle that ambiguity in an insurance contract must be construed in favor of the insured). Rather than articulating a principle of construction or interpretation, this rule expresses a preference among irreconcilably conflicting statutes of limitation. When conflicting statutes are related to each other as general and specific provisions, however, the General Assembly has specified its own rule of preference or choice, which takes precedence and alleviates

any need for resolution by a rule of last resort.

## III.

Because these statutory accrual provisions, when properly construed, mandate that the respondents' claims for monthly underpayments be considered to have accrued on the date the royalties became due, rather than only upon discovery of a contractual breach, the judgment of the court of appeals is reversed, and the case is remanded with directions to reinstate the district court's order of partial summary judgment.

Justice MARTINEZ does not participate.