263 P.3d 103 (2011)
BP AMERICA PRODUCTION COMPANY, f/k/a Amoco Production Company, Petitioner
v.
David PATTERSON, Philip McCoy, William Schaefer, and Beverly Schaefer, Respondents.
No. 10SC214.
Supreme Court of Colorado, En Banc.
October 31, 2011.
*105 Wheeler Trigg O'Donnell LLP, Scott S. Barker, Denver, Colorado, Holland & Hart LLP, Rachel A. Yates, Greenwood Village, Colorado, Attorneys for Petitioner.
Law Offices of George A. Barton, P.C., George A. Barton, Kansas City, MO, Charles Carpenter, Denver, Colorado, Attorneys for Respondents.
Justice MARTINEZ delivered the Opinion of the Court.
In December 2003, Plaintiffs filed a class action, alleging that BP America Production Company ("BP"), formerly known as Amoco Production Company ("Amoco"), improperly deducted postproduction costs from royalty payments due between January 1, 1986 and December 1, 1997 (the "Class Time Period"). To toll the applicable six-year statute of limitations, Plaintiffs claimed that BP fraudulently concealed the material facts which gave rise to their claims.
The trial court entered an order certifying the class, and the court of appeals affirmed in Patterson v. BP America Production Co., 240 P.3d 456 (Colo.App.2010). BP then sought certiorari review in this court. BP challenges two aspects of the order certifying the class. First, BP argues that proof of fraudulent concealment is inherently individualized and, therefore, is not amenable to resolution on a class basis. Accordingly, BP urges us to conclude that the trial court abused its discretion in determining, for the purposes of C.R.C.P. 23(b)(3), that common issues predominated over individual issues. *106 Alternatively, BP argues that the Class Time Period is overly broad and, as a result, includes members who had no costs deducted under the netback methodology. BP thus argues that the trial court erroneously certified a class that encompasses individuals who suffered no damages. We do not agree with either argument and thus affirm the court of appeals' decision holding that ignorance and reliance may be inferred from circumstantial evidence common to the class and that the trial court did not abuse its discretion in certifying the class.

I. Facts and Procedure
In the early 1970s, Plaintiffs entered into lease agreements with Amoco that obligated Amoco to pay them royalties for natural gas extracted from their wells located in either Adams or Weld Counties. Each of the Plaintiffs also signed Oil and Gas Division Orders and Oil and Gas Transfer Orders.
At the time most of the Plaintiffs signed royalty agreements, gas prices were federally regulated. Accordingly, Plaintiffs were paid either the maximum lawful price or the amount set forth in the agreements. None of the royalty agreements expressly permitted Amoco to deduct a proportionate share of the costs incurred to make the gas marketable.
On December 19, 2003, Plaintiffs filed a complaint alleging that BP, the successor in interest to Amoco, underpaid royalties under the leases between January 1986 and December 1997 by using a netback methodology as opposed to the percentage of sale method provided for in the leases. Plaintiffs alleged that in the 1980s, as the natural gas market was being deregulated, BP gradually started using a netback methodology to calculate royalty payments. Under the netback methodology, BP deducted a proportionate share of the post-production costs incurred to make the gas marketable, such as the costs of gathering, dehydration, compression, transportation, fuel, treatment, and processing. Plaintiffs claimed, however, that BP did not disclose its use of the netback methodology. Instead, Plaintiffs claimed that BP consistently and uniformly represented to Plaintiffs that royalty payments were being calculated based on the gross volume of natural gas sold multiplied by the actual price.
In support of these claims, Plaintiffs presented substantial evidence regarding BP's communications with class members. For example, in monthly Royalty Reports sent to Plaintiffs with their royalty checks, BP represented that royalties were being paid based on the total value received by BP, less deductions only for production taxes. Similarly, in Royalty Brochures periodically sent to Plaintiffs, BP failed to disclose that it was deducting post-production costs. Plaintiffs also presented evidence that BP appointed a committee in 1990 to review the format of the Royalty Reports provided to Plaintiffs each month. The committee unanimously recommended that BP disclose the fact that it was deducting gathering, compression, transportation, and other marketing costs from Plaintiffs' monthly royalty payments. The committee acknowledged, however, that such full disclosure would increase the risk of litigation, and in particular, claims against BP to limit its right to deduct costs. BP's management ultimately rejected the proposal and refused to disclose BP's use of the netback methodology. Plaintiffs alleged that they remained unaware of BP's deductions until they were sued in 2003 by Kerr-McGee.[1] Two months later, Plaintiffs filed the present action and moved for class certification.
Before the trial court could rule on the motion for class certification, BP moved for partial summary judgment, arguing that many of Plaintiffs' claims were barred by the six-year statute of limitations. The trial court granted BP's motion and held that Plaintiffs' claims were time-barred. The court of appeals reversed in Patterson v. BP America Production Co., on the grounds that Plaintiffs' claims did not accrue until the date they discovered or should have discovered that BP breached the royalty agreements. 159 P.3d 634 (Colo.App.2006), rev'd, 185 P.3d 811 (Colo.2008). The court of appeals also rejected BP's argument that the Division and Transfer Orders, signed by each Plaintiff, *107 provided them with actual notice of BP's use of the netback methodology. Id. at 640. Finally, the court of appeals held that there was a genuine issue of material fact regarding Plaintiffs' fraudulent concealment claim because Plaintiffs had presented "substantial evidence" in support of their claim that BP fraudulently concealed its use of the netback methodology. Id. at 641.
In BP America Production Co. v. Patterson, we reversed the court of appeals and held that Plaintiffs' claims accrued on the date their royalties became due. 185 P.3d 811, 815 (Colo.2008). However, we left untouched the court of appeals' ruling that an issue of fact remained regarding whether the statute of limitations had been equitably tolled by BP's allegedly fraudulent concealment of its use of the netback methodology. Id.
On remand, Plaintiffs filed a renewed motion for class certification. The trial court held an evidentiary hearing on the motion. The court found that Plaintiffs had satisfied all of the requirements of C.R.C.P. 23(a) and (b)(3) and issued an order certifying the class.[2] First, the court determined that the class was defined with sufficient precision to ascertain whether or not a particular individual is a member of the class. In support of this determination, the trial court found that Plaintiffs would be able to submit a comprehensive damages analysis for each Plaintiff for the entire Class Time Period from January 1986 to December 1997.
The trial court also determined that common issues predominated over individual issues for the purposes of C.R.C.P. 23(b)(3). Central to this determination was the disputed issue of whether Plaintiffs could establish a class-wide theory of proving the elements of their fraudulent concealment claim. BP conceded that three elements of Plaintiffs' fraudulent concealment claimBP's concealment of the improper post-production cost deductions, BP's knowledge that such facts were being concealed from the Plaintiffs, and BP's intention that the concealment be acted upon by the Plaintiffscould be proved with class-wide evidence. BP, however, argued that the trial court would have to analyze the individual conduct of each class member to determine whether Plaintiffs had established three elements to toll the statute of limitations, namely, that each Plaintiff was ignorant of BP's concealment of its use of the netback methodology, that each Plaintiff's actions in reliance on the concealment resulted in damages, and that each Plaintiff was unable to discover the concealment. In response, Plaintiffs argued that they could prove these elements with circumstantial evidence common to the class.
The trial court explained that it is well-established in Colorado that the ignorance and reliance elements of fraudulent concealment may be inferred from circumstantial evidence. The trial court further noted that other jurisdictions also have held that the reliance element of fraudulent concealment may be inferred where there is sufficient evidence to demonstrate improper concealment of a material fact. The trial court then found that a jury could reasonably infer from the common evidence in the case that the Plaintiffs were ignorant of BP's use of the netback methodology and relied on BP's concealment of its use of that methodology.
The trial court found unpersuasive BP's argument that there would be individual issues pertaining to Plaintiffs' ignorance of BP's use of the netback methodology and reliance on BP's concealment of the netback methodology. BP had presented various individual correspondences where certain Plaintiffs contested BP's use of the netback methodology. The trial court, however, explained that these correspondences merely demonstrated that Plaintiffs disagreed with BP's proposal to use the netback methodology, not that Plaintiffs actually knew that BP was using that methodology. In fact, instead of communicating its use of the netback methodology to Plaintiffs, the trial court found that BP never disclosed its deductions of post-production costs in common communications with Plaintiffs, such as the Royalty Reports and Royalty Brochures periodically sent to Plaintiffs. Moreover, the trial court noted that the evidence BP offered to prove that Plaintiffs should have known of the netback *108 methodology is common to the class. Based on this analysis of the evidence, the trial court determined that common issues predominated over any individual issues that might exist with respect to Plaintiffs' claim that BP fraudulently concealed its use of the netback methodology. The trial court further determined that common issues predominated over individual issues with respect to BP's alleged breach of the Royalty Agreements at issue. The trial court thus certified Plaintiffs' C.R.C.P. 23(b)(3) class.
BP appealed the trial court's order pursuant to C.R.C.P. 23(f).[3] The court of appeals affirmed in Patterson, 240 P.3d at 456. First, the court of appeals held that the ignorance and reliance elements of a fraudulent concealment claim may be inferred from circumstantial evidence common to a class. Id. at 467 ("[E]ven without a presumption of reliance, named plaintiffs in a class action may demonstrate ignorance or reliance on a classwide basis, using circumstantial evidence that is common to the class."). The court of appeals then observed that the class-wide evidence in the case and, in particular, the undisputed fact that BP intentionally chose not to disclose its use of the netback methodology, would "allow a reasonable inference that BP obtained exactly the result that it intended, namely, ensuring the [Plaintiffs'] lack of knowledge and preventing them from filing lawsuits ...." Id. at 468 (citing Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J.Super. 31, 752 A.2d 807, 817 (N.J.Super.Ct.App.Div.2000)). The court of appeals thus concluded that the trial court did not abuse its discretion in determining that Plaintiffs had a valid class-wide theory of proving the ignorance and reliance elements of fraudulent concealment.
The court of appeals further noted that "individual issues regarding applicable statutes of limitations do not necessarily defeat class certification." Id. (collecting cases). Pointedly, the court of appeals noted that "BP has presented no evidence to suggest that any more than a handful of [Plaintiffs] had individual interactions with BP representatives, and the district court clearly considered this evidence." Id. at 469. The court thus concluded that the trial court did not abuse its discretion in finding that common issues predominated over individual issues with respect to Plaintiffs' fraudulent concealment claim.
Finally, the court of appeals rejected BP's argument that the Class Time Period, and hence the class definition, was overly broad. Id. at 463. The court of appeals explained that Plaintiffs had presented expert testimony that could be used to determine the amount of any underpayment by BP and allocate that amount to each class member. The court of appeals thus concluded that the trial court did not abuse its discretion in accepting the class definition. Id. at 464.
BP appealed to this court and we granted certiorari.[4]

II.
Whether to certify a class action lies within the trial court's discretion, and will not be disturbed absent an abuse of its discretion. Farmers Ins. Exch. v. Benzing, 206 P.3d 812, 817 (Colo.2009). An abuse of discretion occurs where the trial court's decision is manifestly arbitrary, unreasonable, or unfair, or when the trial court applies the incorrect legal standards. Jackson v. Unocal Corp., 262 P.3d 874, 879 (Colo.2011). "So long as the trial court rigorously analyzes the evidence, it retains the discretion to find to its satisfaction whether the evidence supports each class C.R.C.P. 23 requirement." Id. at 884. Where the certification decision rests on a purely legal question of law, we review that legal issue de novo. Benzing, 206 P.3d at 814; see also Jackson, 262 P.3d at 884 n. 11.

*109 III.
BP's opposition to class certification focuses primarily on the issue of predominance as set forth in C.R.C.P. 23(b)(3).[5] BP also contests the Class Time Period, arguing that it is overly broad in time and encompasses individuals who have not shown any injury. We proceed directly to these two issues.

A. C.R.C.P. 23(b)(3) Predominance
To establish predominance, a plaintiff must demonstrate that questions of law or fact common to the class predominate over those issues that affect only individual members. C.R.C.P. 23(b)(3). The predominance inquiry is a "fact-driven, pragmatic inquiry[,]" Medina v. Conseco Annuity Assur. Co., 121 P.3d 345, 348 (Colo.App.2005), that requires a trial court to rigorously analyze the evidence presented, see Jackson, 262 P.3d at 881-82. Often, the issue most relevant to this inquiry is "whether the plaintiff advances a theory by which to prove or disprove `an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" Benzing, 206 P.3d at 820 (quoting Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 580 (D.Minn. 1995)).
In this case, each Plaintiff must show that the statute of limitations was tolled by BP's fraudulent concealment of its use of the netback methodology. The five elements of fraudulent concealment are:
(1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.
First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp., 744 P.2d 1197, 1200 (Colo.1987). In addition, a limitation period should not be tolled for fraudulent concealment unless a plaintiff "is unable, by reasonable diligence, to discover the facts necessary for determining the existence of a claim for relief." Id. at 1201. "[B]ecause tolling is an equitable remedy, its application involves an examination of the facts and circumstances of individual cases to determine when equity requires such a remedy." Morrison v. Goff, 91 P.3d 1050, 1057 (Colo.2004); see also Garrett v. Arrowhead Imp. Ass'n, 826 P.2d 850, 855 (Colo.1992).
The trial court explained "it is undisputed that BP engaged in a systematic scheme to conceal the material facts from the Class, as is the case here." Thus, BP does not contest Plaintiffs' ability to establish the first, second, and fourth elements of their fraudulent concealment claim with class-wide proof. BP instead argues that there are individual questions regarding each Plaintiff's ignorance of BP's use of the netback methodology, the actions taken by each Plaintiff in reliance on BP's concealment of the netback methodology, and each Plaintiff's ability to discover the concealed information. Because these individualized determinations are paramount to Plaintiffs' ability to toll the statute of limitations based on fraudulent concealment, BP urges us to conclude that individual issues predominate over common issues for the purposes of C.R.C.P. 23(b)(3).
In reply, Plaintiffs argue that the ignorance and reliance elements of a fraudulent concealment claim may be inferred from circumstantial evidence common to a class. In this case, Plaintiffs claim that they can prove ignorance and reliance on a class-wide basis with circumstantial evidence of BP's undisputed, systematic scheme of concealing its *110 use of the netback methodology. They further claim that BP has failed to rebut these class-wide inferences with individual evidence.
Thus framed, the legal issue at the core of the C.R.C.P. 23(b)(3) determination in this case is whether Colorado law permits Plaintiffs to establish ignorance, reliance, and diligence on a class-wide basis with circumstantial evidence. In Benzing, we specifically reserved the issue of whether an inference or presumption of reliance can be drawn from uniform, material misrepresentations or omissions in common law fraud or consumer protection claims. 206 P.3d at 823-24. The plaintiff in Benzing argued that he was entitled to "at least an inference of causation or reliance where there is a material uniform misrepresentation or omission in such class actions." Id. at 823. In support of this proposition, the plaintiff cited to Colorado and out-of-state decisions. Id. (collecting cases). However, because this argument was articulated for the first time on appeal, we reached no opinion as to its merit. Id. at 824. Instead, we simply noted that there were arguments for and against applying such a presumption or inference as a class-wide theory of maintaining a consumer protection or common law fraud class action. Id. at 824 n. 9 (collecting cases). We now squarely address this issue.
Our caselaw has recognized that the ignorance and reliance elements of a fraudulent concealment claim may be established with circumstantial evidence. In Kopeikin v. Merchants Mortgage & Trust Corp., we explained that a plaintiff is not required to present direct proof of reliance to prevail on a common-law fraud claim:
We have repeatedly held that fraud may be inferred from circumstantial evidence. See, e.g., Zimmerman v. Loose, 162 Colo. 80, 425 P.2d 803 (1967); Hinshaw v. Hinshaw, 148 Colo. 262, 365 P.2d 815 (1961); In re Holmes' Estate, 98 Colo. 360, 56 P.2d 1333 (1936). See also Wilbourn v. Mostek Corp., 537 F.Supp. 302 (D.Colo.1982). Direct evidence of reliance, one of the elements of fraudulent concealment, is not required. Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458 (Colo.1937). 679 P.2d 599, 602 (Colo.1984). We reversed the trial court's order which had directed a verdict for the defendants against those plaintiffs who failed to personally testify as to their reliance on defendants' fraudulent concealment of the material facts. Id. Kopeikin thus stands for the proposition that reliance may be inferred from circumstantial evidence where the defendant concealed a material fact from the plaintiff.
It follows that the ignorance and reliance elements of fraudulent concealment may be established with circumstantial evidence common to a class. Out-of-state courts have recognized that a jury may presume reliance on a class-wide basis where there is sufficient, common evidence that the defendant concealed a material fact from class members. See, e.g., Cope v. Metro. Life Ins. Co., 82 Ohio St.3d 426, 696 N.E.2d 1001, 1008 (1998) ("When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements."); Weinberg v. Hertz Corp., 116 A.D.2d 1, 499 N.Y.S.2d 693, 696 (N.Y.App. Div.1986) (holding that "once it has been determined that the representations alleged are material and actionable, thus warranting certification, the issue of reliance may be presumed subject to such proof as is required on the trial"), aff'd 69 N.Y.2d 979, 516 N.Y.S.2d 652, 509 N.E.2d 347 (1987); see also Murray v. Sevier, 156 F.R.D. 235, 249 (D.Kan.1994); Baughman v. State Farm Mut. Auto. Ins. Co., 88 Ohio St.3d 480, 727 N.E.2d 1265, 1275 (2000).
Out-of-state courts have also recognized that a jury may infer reliance from circumstantial evidence common to a class. See, e.g., Klay v. Humana, Inc., 382 F.3d 1241, 1259 (11th Cir.2004) (indicating that "while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)"); Wiener v. Dannon Co., Inc., 255 F.R.D. 658, 669 (C.D.Cal.2009) (finding that "the evidence presently before the Court *111 allows for an inference of reliance in this case [and that, a]ccordingly, reliance may be established on a common basis"); Vasquez v. Super. Ct., 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964, 973 (1971) ("It is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class."); Varacallo, 752 A.2d at 817 (explaining that a class-wide inference of reliance is particularly appropriate where "a party makes false representations [] with the intent that they be communicated to others for the purpose of inducing the others to rely upon them" (quotations omitted)). We thus hold that the ignorance and reliance elements of a fraudulent concealment claim may be inferred from circumstantial evidence common to a class. The same reasoning applies to the requirement that a plaintiff be diligent in discovering a claim for relief. When common evidence regarding the omission or non-disclosure of a material fact supports an inference of ignorance, a plaintiff's inability to discover the concealed information also may be inferred.
Of course, the defendant may introduce individual evidence to rebut a class-wide inference. See Baughman, 727 N.E.2d at 1275; Vasquez, 94 Cal.Rptr. 796, 484 P.2d at 973. Accordingly, whether or not the inference applies depends on the facts and circumstances of each case. The trial court must therefore rigorously analyze the evidence presented to determine whether there is evidence common to the class to support such an inference. Compare Cope, 696 N.E.2d at 1008-09 (recognizing that a jury could infer reliance on a class-wide basis due to "the use of form documents, standardized practices and procedures, common omissions spelled out in written contracts, and allegations of a widespread scheme to circumvent statutory and regulatory disclosure requirements, any one of which has been held to warrant class action treatment") with Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 694 (Tex.2003) (refusing to permit class members to proceed on a class-wide inference of reliance because there was "no evidence that purchasers actually did rely on [defendant's] statements so uniformly that common issues of reliance predominate[d] over individual ones" (emphasis in original)).
The trial court must then determine whether the class-wide inference causes common issues to predominate over individual issues for the purposes of C.R.C.P. 23(b)(3). The purpose of a class-wide inference is to minimize the need for individual inquiries into each class member's reliance or ignorance. Baughman, 727 N.E.2d at 1276. In In re Flat Glass Antitrust Litigation the court explained,
[T]he issue of the fact of concealment is the predominating question, even though other individual questions are present, because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did, rather than what plaintiffs did.
191 F.R.D. 472, 487 (W.D.Pa.1999). The court then certified the class because "the crucial common questions on the fraudulent concealment issues will relate to whether defendants successfully concealed the existence of the alleged conspiracy, which proof will be common among the class members in each class." Id. at 488; see also In re Linerboard Antitrust Litig., 305 F.3d 145, 163 (3d Cir. 2002) ("Notwithstanding the individual determinations that will undoubtedly arise at trial, common issues of concealment predominate here because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did." (internal quotations omitted)); Fisher Bros. v. Mueller Brass Co., 102 F.R.D. 570, 578-79 (E.D.Pa.1984) (determining that common questions regarding defendants' alleged concealment of a conspiracy predominated over individual issues because there was no evidence that individual plaintiffs knew or should have known about conspiracy); In re Fine Paper Antitrust Litig., 82 F.R.D. 143, 154-55 (E.D.Pa.1979) ("The key question on the issue of fraudulent concealment will relate to whether defendants successfully concealed the existence of the alleged conspiracy, and the proof of this contention [what defendants did] will necessarily be common among the class members."). In other circumstances, courts have refused to permit a class action to proceed on a class-wide inference *112 due to the predominance of individual questions over common questions. See, e.g., McManus v. Fleetwood Enter. Inc., 320 F.3d 545, 550 (5th Cir.2003) (explaining that plaintiffs had failed to show that misrepresentations were "sufficiently uniform to justify class treatment" and thus concluding that the "district court abused its discretion in finding that questions of fact common to the class were predominant"); Petty v. Wal-Mart Stores, Inc., 148 Ohio App.3d 348, 773 N.E.2d 576, 581 (2002) (finding that individual issues regarding fraudulent concealment claim predominated over common issues due to the lack of a "generalized body of evidence, common to the entire class, that could be relied upon to prove or disprove the claims of the class"). Ultimately, the trial court must exercise its case management discretion to determine whether common issues predominate over individual issues and whether the claims can be managed as a class action. See Jackson, 262 P.3d at 880.
In the instant case, the trial court determined that a jury could reasonably infer ignorance and reliance from circumstantial evidence common to the class. The trial court found it undisputed that BP began deducting post-production costs in the mid-1980s. BP, however, never notified the Plaintiffs that such costs were being deducted in royalty calculations, nor did BP's Royalty Reports or Royalty Brochures ever disclose any of the deductions at issue. The trial court further found it undisputed that none of the named Plaintiffs actually knew that BP was deducting post-production costs until after 2001. Moreover, the trial court found that purported evidence that Plaintiffs should have known of the netback methodology was common to the class. Finally, it was undisputed that BP intentionally concealed its deductions of post-production costs due to the risk of litigation, and in particular, claims against BP to limit its right to deduct costs. Based on this common evidence, the trial court determined that a jury could reasonably infer that the Plaintiffs had no knowledge of BP's improper royalty accounting methods, and that the Plaintiffs acted on that lack of knowledge by not disputing BP's calculations. As a result of these class-wide inferences, the trial court determined that common issues regarding fraudulent concealment predominated over individual issues. This determination was supported by a rigorous analysis of the evidence and thus did not constitute an abuse of discretion. See State Farm v. Reyher, ___ P.3d ___, ___, 2011 WL 5120836 (Colo.2011).
Nonetheless, BP argues that the trial court abused its discretion in determining that common issues predominated over individual issues regarding Plaintiffs' fraudulent concealment claim. BP presents four arguments, none of which is persuasive. To begin with, BP argues that tolling is an equitable remedy and, as such, the trial court has a duty to examine "the specific facts and circumstances of individual cases to determine when equity requires such a remedy." See Goff, 91 P.3d at 1057. BP claims that the trial court overlooked its duty to examine each individual case by erroneously accepting Plaintiffs' class-wide inferences of ignorance and reliance.
Effectively, BP asks us to adopt a per se rule barring class actions involving the fraudulent concealment defense to the statute of limitations. Most courts have rejected this line of reasoning. See In re Linerboard, 305 F.3d at 162 (discussing cases). Instead, courts have reasoned that "[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir.2000). So long as common issues predominate over individual issues, a fraudulent concealment claim is amenable to class-wide adjudication. Indeed, courts have recognized that any individual issues raised by a fraudulent concealment claim can be addressed in the context of the class action mechanism. See In re Flat Glass, 191 F.R.D. at 488 ("With respect to the individual issues raised by fraudulent concealment, they may be adjudicated in the same fashion and at the same time as the individual damages issues, should they arise."). We thus affirm the trial court's determination that common issues of fraudulent concealment predominate over individual *113 issues, and that Plaintiffs' fraudulent concealment claim is amenable to class-wide adjudication.
BP also argues that the trial court erroneously relied on out-of-state cases in adopting class-wide presumptions of ignorance and reliance. BP explains that cases permitting class-wide presumptions typically involve a written misrepresentation of a material fact made to every class member or oral communications that followed a script, recited by rote with little deviation. See, e.g., Davis v. S. Bell Tel. & Tel. Co., 158 F.R.D. 173, 176, 178 (S.D.Fla.1994) (sales staff relied upon and did not vary from "written scripts" that contained all of the misrepresentations); Mayo v. Sears, Roebuck & Co., 148 F.R.D. 576, 583 (S.D.Ohio 1993) ("Plaintiffs' allegations turn on Sears' use of identical forms, common sales techniques, and routinized procedures for creating and registering liens and extending credit."). BP claims that no such uniform misrepresentations existed here where BP communicated different information to different Plaintiffs and where Plaintiffs responded differently to BP's Division Orders disclosing BP's accounting methodology. BP thus claims that the trial court erred by relying on inapposite out-of-state cases to permit class-wide presumptions of ignorance and reliance in the instant case.
BP's argument is based on an erroneous view of the trial court's factual findings. The trial court found that there was substantial evidence that BP fraudulently concealed its use of the netback methodology from the entire class. The trial court explained that this substantial body of evidence would have a common application to all of the Plaintiffs. For example, the trial court explained that BP used a common method to communicate with Plaintiffs, periodically sending Royalty Brochures, including Royalty Reports with each payment check, and requiring each Plaintiff to sign Division Orders. None of these common forms, however, disclosed BP's use of the netback methodology. The trial court further explained that BP never provided any subsequent notification to class members that it was discounting post-production costs. The trial court found unpersuasive BP's contention that individual issues regarding Plaintiffs' knowledge of and reliance on BP's concealment of the netback methodology predominate. The trial court was therefore satisfied that there was enough common evidence to allow a reasonable inference that BP obtained the result it wanted, namely, ensuring Plaintiffs' ignorance and preventing lawsuits from being filed. This finding was supported by the record and within the trial courts' discretion. State Farm, ___ P.3d at ___. Indeed, as the court of appeals noted, inferring reliance on a class-wide basis is "particularly compelling" where, as here, "there is evidence that the defendant intentionally withheld information to induce the very action which plaintiff took." Patterson, 240 P.3d at 466 (citing Varacallo, 752 A.2d at 812). Therefore, BP's argument that the trial court improperly relied on out-of-state cases is without merit.
Third, BP claims the trial court erred by inferring the elements of fraudulent concealment for the entire class in the face of contrary direct evidence. What is more, BP claims that such class-wide inferences become irrebuttable in the class action context, thereby infringing on BP's right to defend itself against Plaintiffs' claims. This argument misses the mark. Our caselaw requires a trial court to rigorously analyze all the evidence presented to satisfy itself that Plaintiffs have met the requirements for class certification. Jackson, 262 P.3d at 882. A trial court may not ignore evidence presented refuting a C.R.C.P. 23 requirement.
Here, BP had the opportunity to present individual evidence demonstrating that Plaintiffs knew about BP's use of the netback methodology or did not rely on BP's concealment of that methodology. BP offered evidence suggesting that certain royalty owners disagreed with BP's proposal to use the netback methodology and thus modified the Division Orders they signed. The trial court, however, found this evidence unpersuasive because it did not demonstrate that BP actually informed these individual class members about its use of the netback methodology. The trial court concluded that BP had not presented evidence showing that individual Plaintiffs knew about BP's deduction of post-production *114 costs. Due to the lack of individual evidence, the trial court concluded that Plaintiffs could rely on class-wide inferences of ignorance and reliance, and thus determined that common issues predominated over individual issues with respect to Plaintiffs' claim of fraudulent concealment. This determination did not constitute an abuse of discretion and thus will not be disturbed on appeal. See State Farm, ___ P.3d at ___. Moreover, this determination does not infringe on BP's right to present individual evidence given that the trial court's certification order remains subject to proof later discovered or presented at trial on the merits, and thus may be modified by the trial court. See Jackson, 262 P.3d at 883 (a trial court "has a duty to monitor, and the flexibility to alter, the class certification decision in light of any new evidence"); see also Mowbray, 208 F.3d at 297 n. 6 ("In all events, should [the defendant] demonstrate in the future that individualized statute-of-limitations problems actually shift the balance and undercut the predominance of common issues, the district court may modify its class certification order (or even decertify the class)."). Accordingly, we dismiss BP's arguments that the trial court overlooked any direct evidence it presented or that a class-wide inference becomes irrebuttable in the class context.
Finally, BP argues that the trial court erred by failing to consider whether Plaintiffs should have known about BP's concealment of the netback methodology. A limitation period generally "should be tolled for fraudulent concealment only so long as the plaintiff is unable, by reasonable diligence, to discover the facts necessary for determining the existence of a claim for relief." First Interstate Bank, 744 P.2d at 1201. Contrary to BP's argument, however, the trial court did consider BP's contention that Plaintiffs should have known about BP's use of the netback methodology. The trial court, however, determined that the evidence BP purported to use to demonstrate that Plaintiffs should have known that post-production costs were being deducted from their royalty payments, namely the Royalty Brochures and Royalty Reports, was common to the class as a whole. This common evidence thus bolstered the trial court's determination that common issues regarding fraudulent concealment predominated over individual issues for the purposes of C.R.C.P. 23(b)(3).

B. Class Time Period
A proposed class definition must be sufficiently definite so that it is administratively feasible to ascertain whether or not a particular individual is a member of the class. In Jackson, we held that "a court must determine whether the proposed class definition `specif[ies] a particular group that was harmed during a particular time frame,' and `facilitate[s] a court's ability to ascertain [the class's] membership in some objective manner.'" Op. at 115 (quoting Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 477 (S.D.Ohio 2004)); see also Cook v. Rockwell Int'l Corp., 151 F.R.D. 378, 382 (D.Colo.1993) (requiring a proposed class definition that is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member [of the class]"). This determination turns on whether there is an evidentiary basis for Plaintiffs' proposed class definition. See Jackson, 262 P.3d at 887 (focusing on "whether there [was] a logical reason or evidentiary basis for drawing the class boundaries at a particular location" (quotations omitted)).
Here, the trial court satisfied itself that the evidence presented supported the proposed class definition. Plaintiffs' accounting expert testified that BP was using the netback methodology, albeit not uniformly, throughout the entire Class Time Period. He also testified that sufficient accounting information was available to comprehensively review BP's royalty accounting for the entire Class Time Period, and to prepare damage calculations for all of the class members. Based on this undisputed testimony, the trial court determined that it was administratively feasible to identify whether an individual was in the class. It thus approved the proposed Class Time Period from January 1, 1986 to December 1, 1997.
BP claims that the Class Time Period is overbroad and thus violates LaBerenz v. *115 American Family Mutual Insurance Co. because it potentially includes individuals who suffered no injury. 181 P.3d 328, 336 (Colo. App.2007) ("Any class members who suffered no damage would have no claim and would not properly belong in the class."). Prior to 1993, BP claims that it did not consistently use the netback methodology. In fact, BP claims there is no practical means to determine whether BP used the netback methodology in specific circumstances prior to 1993. It is therefore impossible, in BP's view, to definitively identify who was injured by its inconsistent use of the netback methodology from 1986 to 1993. Thus, BP argues that the class, if certified, must be limited to the Class Time Period from 1993 to 1997 so as to exclude Plaintiffs who may not have suffered an injury prior to 1993.
This argument overlooks the trial court's clear factual findings. The trial court expressly found that Plaintiffs will be able to submit a comprehensive damages analysis for each Plaintiff for the entire Class Time Period. The trial court was satisfied that this evidence would allow it to identify which Plaintiffs were injured by BP's use of the netback methodology prior to 1993 and thus properly belong in the class. This determination complies with Jackson, which merely requires a class definition that permits the court to determine whether a particular individual is a member of the class. See Op. at 115. Accordingly, the trial court did not abuse its discretion in certifying a class extending from January 1, 1986 through December 1, 1997.
In fact, a shorter Class Time Period might preclude Plaintiffs from recovering the alleged full amount of their royalty underpayments. Based on the evidence presented, the trial court was satisfied that BP did use the netback methodology, albeit inconsistently, prior to 1993 to calculate certain Plaintiff's royalty payments. If the trial court had limited the Class Time Period to only include the timeframe from 1993 to 1997, it would have excluded certain Plaintiffs from recovering the full amount of their claims. Such a result was unnecessary given the trial court's determination that it was administratively feasible to separate Plaintiffs with claims prior to 1993 from those without claims. The trial court did not therefore abuse its discretion in approving the entire Class Time Period, and certifying the class accordingly.

IV.
For the foregoing reasons, we conclude that the court of appeals did not err in affirming the trial court's class certification order. The judgment of the court of appeals is therefore affirmed.
Justice EID concurs in the judgment, and Justice RICE joins in the concurrence.
Justice EID, concurring in the judgment.
We generally should be cautious in permitting classwide proof of reliance and ignorance in cases of alleged fraudulent concealment. Cf. Farmers Ins. Exchange v. Benzing, 206 P.3d 812 (Colo.2009). In this case, however, the district court found that BP made a decision not to inform royalty owners of its use of the netback method, that the royalty owners had no knowledge of BP's use of the method, and that the royalty owners acted on that lack of knowledge by not disputing the calculations. In addition, the court found that evidence of individualized interaction between royalty owners and BP was scant. The court concluded that, based on these findings, common issues predominated over individual issues "by a preponderance of the evidence." Because the district court employed the proper preponderance of the evidence standard in coming to this conclusion, see Jackson v. Unocal (Eid, J., dissenting), and did not otherwise abuse its discretion, I would affirm its decision to certify the class in this case. I therefore concur in the result reached by the majority.
I am authorized to state that Justice RICE joins in this concurrence.
NOTES
[1] Kerr-McGee, a successor in interest to BP and Amoco, brought a declaratory judgment action seeking to clarify the propriety of deducting post-production costs.
[2] BP did not contest C.R.C.P. 23(a)'s numerosity, commonality, or adequacy requirements.
[3] The court of appeals explained that BP did not contest C.R.C.P. 23(a)(2)'s commonality requirement or C.R.C.P. 23(a)(4)'s adequacy requirement. Patterson, 240 P.3d at 462-63. The court of appeals further noted that BP did not directly argue that the Plaintiffs had failed to establish the superiority requirement of C.R.C.P. 23(b)(3). Id. at 463. Accordingly, the court of appeals declined to address these arguments, confining its analysis solely to the C.R.C.P. 23 elements directly addressed by BP. Id.
[4] We granted certiorari on the following issue:

Whether the court of appeals erred in affirming the trial court's certification of a class.
[5] Before the court of appeals, BP did not argue, at least directly, that Plaintiffs had failed to establish the superiority requirement of C.R.C.P. 23(b)(3). See Patterson, 240 P.3d at 456 ("BP does not argue, at least directly, that the Named Plaintiffs have failed to establish the superiority requirement of C.R.C.P. 23(b)(3), although we recognize that the superiority and predominance inquiries are, to some extent, interrelated."). Similarly, on appeal to this Court, BP does not directly argue that Plaintiffs failed to establish the superiority requirement of C.R.C.P. 23(b)(3). Accordingly, like the court of appeals, we focus solely on BP's challenge to the predominance prong of C.R.C.P. 23(b)(3).