24CA0621 Three Circle v Public Service 02-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0621
Cheyenne County District Court No. 22CV30006
Honorable Tarryn L. Johnson, Judge

---

Three Circle Soil & Gas, LLC, a Colorado limited liability company, and Frying Pan Ranch, LLC, a Colorado limited liability company,

Plaintiffs-Appellants and Cross-Appellees,

v.

Public Service Company of Colorado d/b/a Xcel Energy, a Colorado corporation,

Defendant-Appellee and Cross-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
CROSS-APPEAL DISMISSED, AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE PAWAR
Harris and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 27, 2025

---

Robinson Waters & O'Dorisio, P.C., Kimberly A. Bruetsch, Nicholas F. Labor, Denver, Colorado, for Plaintiffs-Appellants and Cross-Appellees

Gordon Rees Scully Mansukhani, LLP, Franz Hardy, Abigail H. Kregor, Denver, Colorado, for Defendant-Appellee and Cross-Appellant

¶ 1 Plaintiffs, Three Circle Soil & Gas, LLC, and Frying Pan Ranch, LLC, sued defendant, Xcel Energy, for breach of the lease agreement that allowed Xcel to operate a wind farm on Frying Pan's land. The district court granted Xcel summary judgment on the grounds that all plaintiffs' claims were time barred by a three-year statute of limitations. Plaintiffs appeal, and Xcel cross-appeals. We affirm in part, reverse in part, dismiss the cross-appeal, and remand with directions.

## I.     Background

¶ 2 Frying Pan entered into a lease agreement with Invenergy Wind Development, LLC, which allowed Invenergy to construct and operate wind turbines on Frying Pan's land. Invenergy entered into similar lease agreements with neighboring landowners, resulting in the placement of numerous wind turbines on the land of several different landowners in the area.

¶ 3 Under Frying Pan's lease agreement, Invenergy got an easement to construct and operate wind turbines on Frying Pan's land in exchange for periodic royalty payments to Frying Pan based on the energy the turbines produced. The agreement also required Invenergy to release its rights to any land initially covered by the

1

easement that would not be used for wind energy production or transmission — in other words, the undeveloped land. The agreement specified a time at which Invenergy had to release the undeveloped land.

¶ 4      Frying Pan assigned its right to receive royalties to Three Circle, and Invenergy assigned its agreement rights to Xcel.

¶ 5      In 2017, Xcel released its interest in several thousand acres of undeveloped land. By 2018, Xcel was producing and selling energy from wind turbines on Frying Pan's land. And by January 2019, Xcel was making royalty payments to Three Circle.

¶ 6      In November 2022, plaintiffs filed this action against Xcel. It included claims for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing. The declaratory judgment and breach of duty of good faith and fair dealing claims were based on Xcel's alleged underpayment of royalties under the royalty formula in the agreement. And plaintiffs alleged two different breaches of the contract — one based on underpayment of royalties and the other on the alleged failure to release undeveloped land as required by the agreement.

¶ 7     Xcel moved for summary judgment, arguing that all the other landowners involved in the wind project were indispensable parties and their absence from the action entitled Xcel to summary judgment.  The district court denied the motion.

¶ 8     Xcel then moved for summary judgment a second time on a different ground: that all plaintiffs' claims were time barred by the applicable statutes of limitation.  The district court initially denied this motion as well.  But Xcel moved the court to reconsider, and upon reconsideration, the court granted Xcel summary judgment.

¶ 9     Plaintiffs appeal.  They argue that the royalty-based claims were timely and that there were material issues of fact that precluded summary judgment on the undeveloped land release claim.  We agree that plaintiffs' royalty-based *breach* claims were timely because they are governed by a six-year statute of limitations.  But the declaratory judgment action was not timely.  And we disagree with plaintiffs' challenge to the entry of summary judgment on the undeveloped land release claim.

¶ 10     Xcel cross-appeals, challenging the court's denial of its first summary judgment motion based on indispensable parties.  We dismiss the cross-appeal for lack of jurisdiction.

## II. District Court's Grant of Summary Judgment

¶ 11 We review an order granting summary judgment de novo. *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 7. Before we get to the issue of which statute of limitations applies to each claim, we first reject plaintiffs' argument that the district court erred by even considering Xcel's motion to reconsider that precipitated the grant of summary judgment.

### A. Xcel's Motion to Reconsider Was Proper

¶ 12 According to plaintiffs, Xcel's motion to reconsider the initial denial of its second summary judgment motion was error because the motion was not based on a change in the law. We reject this argument because the applicable rules contain no such requirement.

¶ 13 C.R.C.P. 121, section 1-15(11), provides that a motion to reconsider "must allege a manifest error of fact or law that clearly mandates a different result or other circumstance resulting in manifest injustice." The rule does not require that the motion be based on a change in the law. And it is clear that Xcel's motion to reconsider alleged a manifest error of law as required by the rule: It alleged that the district court applied the wrong statute of

4

limitations when it initially denied Xcel's second summary judgment motion. Accordingly, the court did not err by addressing the merits of the motion to reconsider.

### B. Statute of Limitations for Royalty Payment Claims

¶ 14 Which statute of limitations applies is a question of law that we review de novo. *See Gunderson v. Weidner Holdings, LLC*, 2019 COA 186, ¶ 9. We agree with plaintiffs that the district court erred by holding that a three-year limitations period applied to the breach of duty of good faith and fair dealing claim and the breach of contract claim based on underpaid royalties. Instead, a six-year limitations period applied to these two claims.

¶ 15 Section 13-80-101(1)(a), C.R.S. 2024, provides that contract claims must be brought within three years after the claim accrues. However, section 13-80-103.5(1)(a), C.R.S. 2024, contains an exception. Any claim that seeks to "recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action" can be brought within six years of accrual. *Id.* The question therefore becomes whether any of plaintiffs' claims sought to recover a liquidated debt or a determinable amount of money.

¶ 16     A debt is determinable "if the amount due is capable of ascertainment by reference to an agreement or by simple computation." *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo. App. 1995).  In other words, if the terms of the agreement provide a formula for calculating the debt, the debt is determinable.  This is true even if the values of certain variables in the formula are disputed and resolving those disputes requires examining facts external to the agreement.  *See id.* at 368 ("[I]f the written document sets forth a specific method for *determining* the amount due, the fact that reference must be made to a fact external to that document does not make a claim under that document unliquidated . . . .").

¶ 17     *Rotenberg* illustrates how this works.  The agreement in that case provided that a client owed his attorney $100 per hour for services rendered.  *Id.*  The parties disputed how many hours the attorney reasonably worked for the client.  *Id.*  Despite this dispute, the debt was deemed determinable for purposes of the statute of limitations and the six-year limitations period applied.  *Id.*

¶ 18     Here, like *Rotenberg,* the agreement contained a formula for calculating Xcel's royalty payments.  Although the formula was

more complicated than the simple one in *Rotenberg*, it was no less determinable. The parties have agreed to keep the precise formula confidential, so we do not reproduce it here. But the only variables in it are the megawatt hours produced from "all project meters," the number of turbines on Frying Pan's land, and the number of turbines in the project. Once the values of these variables are identified, they are plugged into the formula, producing a singular and determinable amount that Xcel must pay Three Circle as a royalty.

¶ 19    For our purposes, it does not matter that the parties may dispute any or all of the three variables in the formula. Just as the *Rotenberg* parties disputed the only variable in that formula, any dispute here about the power produced or number of turbines in the project does not change the fact that Xcel's debt is determinable for statute of limitations purposes. *Cf. Patterson v. BP Am. Prod. Co.*, 159 P.3d 634, 636-37 (Colo. App. 2006) (applying six-year statute of limitations to oil and gas lease that calculated royalties based on percentage of price received for sale of gas produced minus proportionate share of costs incurred to make gas marketable), *rev'd on other grounds*, 185 P.3d 811 (Colo. 2008).

7

¶ 20     We therefore conclude that any claim that sought to collect royalties pursuant to the formula in the agreement was subject to a six-year limitations period under section 13-80-103.5(1)(a).  Any royalty-seeking claim accrued no earlier than 2018 when Xcel started paying royalties.  And plaintiffs filed their action in 2022.  Therefore, any royalty-seeking claim was timely.

¶ 21     The good faith and fair dealing claim and the royalty-based breach of contract claim both sought unpaid royalties under the formula.  They were therefore subject to the six-year limitations period and were not time barred.[1]

¶ 22     In contrast, the declaratory judgment claim sought to recover no money.  And declaratory judgment claims are generally subject to a two-year limitations period.  *See* § 13-80-102(1)(i), C.R.S. 2024 (two-year limitations period for actions for which no specific limitations period is provided); *Harrison v. Pinnacol Assurance*, 107 P.3d 969, 972 (Colo. App. 2004) (applying the catch-all two-year limitations period in section 13-80-102(1)(i) to a declaratory

---

[1] Because we conclude that these claims were brought within the applicable limitations period, we need not address plaintiffs' alternate arguments that they were timely based on equitable tolling or a continuing breach.

judgment claim). Accordingly, the declaratory judgment claim was time barred.

¶ 23    We therefore conclude that the district court properly granted summary judgment on the declaratory judgment claim but erred by granting summary judgment on the good faith and fair dealing claim and the royalty-based breach of contract claim.

### C.    Undeveloped Land Release Claim

¶ 24    Plaintiffs argue that there were disputed issues of material fact regarding when the undeveloped land release claim accrued that precluded summary judgment. Specifically, they argue that the agreement did not require Xcel to release undeveloped land on a particular date but rather before the expiration of a nebulous and undefined period of years. Consequently, according to plaintiffs, their undeveloped land release claim did not accrue until the expiration of that nebulous time period, thereby rendering the claim timely. We disagree and conclude that the plain and unambiguous

language of the agreement required Xcel to release undeveloped land on a particular date.[2]

¶ 25    We interpret the language of a written agreement like this one de novo. *See DA Mountain Rentals, LLC v. Lodge at Lionshead Phase III Condo. Ass'n*, 2016 COA 141, ¶ 16. Our aim is to ascertain and give effect to the parties' intent. *Johnson Nathan Strohe, P.C. v. MEP Eng'g, Inc.*, 2021 COA 125, ¶ 12. We read clauses and phrases in context, seeking to give meaning to all provisions. *Id.* at ¶ 14. If the language of the agreement is unambiguous, we apply it as written. *Id.* at ¶ 13. Language is ambiguous if it is fairly susceptible to more than one *reasonable* interpretation. *Id.*

¶ 26    The agreement here identifies and defines various terms and dates. The "Initial Term" began on the date the agreement was signed and ran for five years. The agreement provided that the

---

[2] We question plaintiffs' framing of this argument as one that alleges the existence of disputed material facts. In our view, the only dispute is whether the undeveloped land release deadline in the agreement is a single date or a nebulous time period. This is not an issue of fact that can be disputed — instead, it is a question of law that is the district court's and ours to resolve. The facts material to this issue appear to be undisputed.

Initial Term would automatically end, and the "Operations Term" would automatically begin, as soon as Xcel began selling electrical energy from one or more of its wind turbines installed on Frying Pan's land:

> If, prior to the end of the Initial Term, [Xcel] installs on the Property one or more Wind Turbines and [Xcel] begins selling electrical energy generated by the Wind Turbines (the actual date of electrical generation from such Wind Turbines, as declared by [Xcel], shall be referred to as the "Commencement Date"), the Initial Term of this Agreement shall automatically expire and the term of this Lease shall automatically extend for twenty-five (25) years (the "Operations Term").

The agreement then required Xcel to release undeveloped land "at the beginning of the Operations Term." So, what does "the beginning of the Operations Term" mean?

¶ 27   We conclude that there is only one point in time that marks the beginning of the Operations Term: the first day of that term. That the agreement gave a separate name to this point in time (the Commencement Date) does not matter. Identifying the same point in time in two different ways does not make the meaning of the agreement on this point ambiguous.

¶ 28    Plaintiffs argue otherwise, contending that "the beginning of the Operations Term" means "a longer period constituting the beginning portion of the 25-year operations term." We find this interpretation unreasonable — especially in light of the agreement's statement that Xcel shall not hold any land "for speculative purposes, or to preclude development by other companies."

¶ 29    Thus, we conclude that the clear and unambiguous language of the agreement required Xcel to release all undeveloped land on the day it began selling energy generated from the turbines on Frying Pan's land. There is no dispute that this occurred in 2018, after Xcel had already released some undeveloped land the previous year. There is also no dispute that a three-year statute of limitations applied to the undeveloped land release claim. *See* § 13-80-101(1)(a) (three-year limitations period for all contract actions). The limitations period for this claim therefore expired in 2021, the year before plaintiffs filed this action in 2022.

¶ 30    Plaintiffs argue that even if the claim accrued more than three years before they filed this action, Xcel's actions equitably tolled the three-year limitations period. However, plaintiffs concede in their principal brief that this tolling argument fails if the agreement "had

a clear date by which the land needed to be released." As explained above, the agreement had such a date, the Commencement Date also known as the beginning of the Operations Term. Accordingly, plaintiffs' tolling argument fails on its own terms.

¶ 31 For these reasons, we conclude that the undeveloped land release claim was time barred, and the district court properly granted Xcel summary judgment on it.

### III. We Dismiss Xcel's Cross-Appeal

¶ 32 In its cross-appeal, Xcel seeks to challenge the district court's denial of its first summary judgment motion, whose grounds were unrelated to the second summary judgment motion the district court granted. We have jurisdiction to review only final judgments. *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 34. And because we have reversed the grant of summary judgment to Xcel, the denial of Xcel's first summary judgment motion is now an unreviewable interlocutory ruling that we lack jurisdiction to review. *See Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 992 (6th Cir. 1999) (suggesting that by reversing dismissal, appellate opinion instantly reinstated

the case and rendered the denial of summary judgment an unappealable interlocutory order).

¶ 33　As part of its cross-appeal, Xcel appears to seek relief in addition to the reversal of the court's denial of its first summary judgment motion. Xcel contends that if we provide Three Circle any relief in the appeal, on remand we should direct the district court to make findings about joining other parties under C.R.C.P. 19. We decline to do so because there is no Rule 19 ruling properly before us. And we express no opinion about any Rule 19 proceedings that might occur on remand.

## IV.　Attorney Fees and Costs

¶ 34　Xcel requests its reasonable attorney fees and costs on appeal and below under the appellate rules and the prevailing party provision of the agreement. We decline to award Xcel its fees and costs under C.A.R. 39 or 39.1. *See* C.A.R. 39(a)(4) (only trial court can order costs if judgment is affirmed in part and reversed in part); C.A.R. 39.1 (appellate court has discretion to determine whether appellate attorney fees are appropriate).

¶ 35　And we conclude that Xcel is not the prevailing party in this appeal for purposes of the prevailing party provision of the

agreement. *See Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230-31 (Colo. 2004) ("A 'prevailing party' is one who prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation"; under that standard, it is possible that no party prevails.).

¶ 36 Finally, we express no opinion about prevailing party fees and costs for the district court litigation because that litigation is ongoing.

## V. Disposition

¶ 37 Xcel's cross-appeal is dismissed for lack of jurisdiction. The summary judgment on the declaratory judgment claim and the undeveloped land release claim is affirmed. The summary judgment on the royalty breach of contract claim and the breach of the duty of good faith and fair dealing claim is reversed, and those claims are reinstated. The case is remanded to the district court with directions to conduct further proceedings consistent with this opinion.

JUDGE HARRIS and JUDGE GROVE concur.